**Mollie NUSSBACHER,**
**Plaintiff-Appellant,**

v.

**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO et al., Defendants-Appellees.**

**No. 74–1142.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 21, 1974.

Decided July 15, 1975.

Rehearing Denied Sept. 24, 1975.

Robert F. Sharp, Chicago, Ill., Sidney B. Silverman, New York City, for plaintiff-appellant.

Bryson P. Burnham, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and WYZANSKI, Senior District Judge.*

PELL, Circuit Judge.

This is an appeal from a final judgment order dismissing the amended derivative complaint of Mollie Nussbacher, a stockholder of Leasco Corporation. Defendants named were the Continental Illinois National Bank and Trust Company of Chicago, appellant herein, Leasco Corporation and the nine members of Leasco's board of directors. Pursuant to directions of the plaintiff no attempt was made to serve the individual defendants with process. Finding that Nussbacher had not made an appropriate demand upon the board of directors of Leasco under Rule 23.1, Fed.R.Civ.P.,[1] the district court held that Nussbacher was precluded from bringing the derivative suit. *Nussbacher v. Continental Illinois Bank and Trust Company,* 61 F.R.D. 399 (N.D.Ill.1973). This appeal followed.

This litigation arose from the acquisition by Leasco of another corporation, Reliance Insurance Company, which allegedly did not desire to be acquired. The allegations of the complaint[2] were that to accomplish its goal it was necessary for Leasco to acquire certain controlling stock of Reliance; that to do so it was necessary to resort to cash purchases rather than the exchange offer originally offered; that Leasco's investment bankers devised a plan whereby Reliance's shareholders would exchange their stock for that of Leasco and simultaneously certain lenders, including Continental, would furnish the money which would be given to the Reliance shareholders in exchange for their stock which would be held by the lenders as security for Leasco's guarantee to repay the money advanced by the lenders.[3]

The gist of the complaint is that the Leasco securities were in actuality collat-

---

* Senior District Judge Charles Edward Wyzanski, Jr. of the United States District Court for the District of Massachusetts is sitting by designation.

1. Rule 23.1 states in pertinent part:

    "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may be properly asserted by it, the complaint shall be verified and shall allege . . . with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

2. The original complaint had also been dismissed for two reasons under Rule 23.1, lack of verification and lack of demand. For our present purposes we are referring to the amended complaint which was subsequently filed as the "complaint" since it was from the dismissal of the amended complaint that this appeal was taken.

3. Continental characterizes the transaction as a purchase of the Leasco shares in which the purchasers, including Continental, had several options: (1) arranging for a secondary offering of the Leasco securities, (2) reselling the securities to Leasco, or (3) as outright purchasers retaining the securities in their own investment portfolios. Because of the disposition we reach on this appeal, it is not necessary at this time to decide whether the substance of the transactions equated with the form thereof.

eral for loans; that as loans they failed to meet applicable provisions of margin regulations;[4] that Leasco paid interest of 15% to the lenders, a rate in excess of that which would have been payable if the loans had been properly collateralized; that the market value of the Leasco securities declined sharply and when redeemed they had a market value substantially below that at the time of the original loan.[5]

In 1972, Nussbacher had commenced an action basically identical to the one here under review in a federal district court in New York against the defendant Continental, the arrangers of the Reliance transaction, and other so-called lenders. Continental secured its dismissal from this action because of lack of venue. It was also alleged that the board of directors consisted of 7 members in July 1968 and that the 6 individual defendants are still directors and constitute a majority of the board. It was further charged that the directors aided and abetted the arrangers and lenders in the allegedly illegal credit plan and in soliciting lenders.

Now coming to that which is crucial to the present appeal, the complaint alleged that plaintiff had not made demand upon Leasco's directors to commence the action for the following reasons, she believing that demand would be a futile and useless act:

"A. (i) After commencing an identical action in the United States District Court for the Southern District of New York, representatives of plaintiffs initiated a discussion with representatives of Leasco to determine whether Leasco would assist plaintiff directly or indirectly in the prosecution of that action. Plaintiff was informed that Leasco's representatives refused to assist plaintiff in any way.

"(ii) On May 10, 1971, Leasco informed the Arrangers and Lenders that it had been advised by counsel that 'it must adopt a neutral stance with regard to the lawsuit.'

"(iii) Leasco's Board of Directors met on April 18, 1972 and discussed the New York action brought by plaintiff. At that meeting, the Board decided that it would be 'contrary to business ethics' and the corporation's interest for Leasco to have initiated such action.

"(iv) In view of the expressed attitude of Leasco's Directors in an identical action commenced by plaintiff in which the defendant Continental was a defendant for a portion of the time, plaintiff does not believe that Leasco's Directors would adopt a different attitude were demand to have been made by her upon them prior to the commencement of this action.

"B. The Leasco Directors, constituting a majority of its present Board, participated in and aided and abetted the Arrangers and Lenders in the illegal credit plan. They are personally liable for damages sustained by Leasco. Being personally involved in the wrongdoing, they cannot reasonably be expected to enforce Leasco's rights.

"C. Because of their personal involvement, the Leasco Directors are seeking to vindicate their actions and are prevented from an unprejudicial consideration of the merits of this action.

"D. Because of the close relationship between the Leasco Directors and the Arrangers and Lenders, they are further prevented from an unprejudicial consideration of the merits of this action."

---

4. The credit regulations of the Federal Reserve Board limit the amount of credit which a bank may extend to a borrower, where the borrower plans to use the credit to invest in certain classes of securities, and where the underlying debt is secured by stock. See Regulation U, 12 C.F.R. 221. A comparable regulation is-

sued by the Federal Reserve Board (Regulation T) limits credit extended by brokers.

5. For an exhaustive discussion of the Leasco-Reliance transactions, see *Feit* v. *Leasco Data Processing Equipment Corporation,* 332 F.Supp. 544 (E.D.N.Y.1971).

The minutes of the meeting of the board of directors referred to in the complaint contained the following:

"The Chairman next gave the Board a status report on the Nussbacher litigation. He said that the Corporation recognized that courts have been quite lenient in permitting shareholders to sue derivatively to seek recovery on behalf of the Corporation even though the Corporation believed, as it did in this case, that the action was contrary to business ethics and that for the Corporation to have initiated such action would have been damaging to its credit and standing in the financial community. He stated that at the time of the Class A transaction, neither he nor to his knowledge anyone connected with the transaction, considered it to be a loan. He stated that if this Corporation had believed it was borrowing money, it would have taken appropriate deductions on its tax returns, which it did not. He stated that, in his view, it would be against the long-term interests of this Corporation to attempt to take advantage of what seems to him to be a legal technicality. He said that the officers and directors of the Corporation would provide affidavits to defendants' counsel being governed in regard to such affidavits solely by the truth of the factual statements therein. Thereupon, upon full discussion, the Board of Directors of this Corporation stated that they were unanimously in agreement with the statement made by the Chairman."

In support of its motion to dismiss directed against the original complaint, Continental filed the affidavit of Saul P. Steinberg, at all material times chairman of the board of Leasco. The affidavit dwelt upon the good faith of the board members, the basis for belief that the Reliance transactions were accomplished legally and that they were what they purported to be, an exchange and purchase arrangement, that it never occurred to the affiant or to his knowledge anybody else that Leasco was in effect borrowing money, and that since the acquisition, Leasco had grown and prospered. The affidavit also contained the following:

"If the Plaintiff or her counsel had proposed that Leasco commence this action, as a matter of business judgment, their proposal would have been rejected for the same reasons that Leasco itself would not have initiated this case. To do so would have been inconsistent with our understanding of the facts and damaging to the business interests of the Company and its shareholders."

\* \* \* \* \* \*

"In my view, the long-term interest of our shareholders will be best served by our maintaining a position of inflexible integrity and a fair dealing in our relations with the financial community; I would have considered it wholly inconsistent with this position for my Company to have participated in this attempt to collect some money from the defendants on the grounds pressed by the plaintiff.

"I have discussed this matter with the other directors of Leasco and I assure this Court that they are in agreement with the views expressed herein. My decision in this respect, and that of my fellow Directors, is based on our unbiased concern for the best interests of the corporation. No personal hope of gain or fear of loss or liability has occasioned the decision to disapprove the *present* derivative suit." [Emphasis added]

\* \* \* \* \* \*

"This exhibit [excerpt of the board minutes quoted heretofore in this opinion] demonstrates the determination of the Board of Directors of Leasco Corporation that the present derivative suit maintained by Plaintiff Nussbacher is inconsistent with the best interests of the Corporation."

At least from the time of the landmark decision in *Hawes* v. *Oakland,* 104 U.S. 450, 461, 26 L.Ed. 827 (1881), it has been clear that the dissident stockholder

in that capacity cannot lightly take upon himself the guardian mantle of assertion of claimed corporate rights not being adequately asserted by the board of directors:

"He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

While there have been numerous subsequent judicial pronouncements, and refinements, of the principle stated in *Hawes,* and the courts have shown varying degrees of liberality or conservatism in applying the standards permitting the derivative action,[6] essentially the applicable rule has been synthesized in Rule 23.1.

It may be wondered why counsel would not almost routinely take the course of making a formal demand, diligently and in good faith, and in so doing inform the board adequately of the basis of the claim he was asking them to enforce. Adequate time should be allowed for a response and preferably a declination should be secured.[7] On the other hand, we cannot be unmindful of the proclivity of adversaries to raise all conceivably legitimate hurdles, and observance of the foregoing procedures, we must admit, would not necessarily avoid a Rule 23.1 challenge.

■ In any event, from the *Hawes* recognition that if an effort is not made to have the directors take the action, there must be a case shown "where it could not be done, or it was not reasonable to require it" to the Rule 23.1 language that the complaint shall allege "with particularity . . . the reasons for his failure to obtain the action or for not making the effort," it is clear that the prospective derivative plaintiff does not have to launch an effort which would be fruitless or futile.

In this brief on this appeal, Continental states the issue thusly: "Is a stockholder who seeks to bring a derivative suit on behalf of her corporation excused from the Rule 23.1 requirement of prior demand upon the corporate Board, in the absence of a showing of disability of the Board to act impartially and in the best interests of the corporation in determining whether to pursue the supposed cause of action?"

In accordance with this statement of the issue, much of the argument of Continental is devoted to a demonstration of the good faith business judgment exercised by the Leasco board of directors in connection with the Reliance transaction. For example, Continental argues that "[t]o ignore what actually happened, [which would seem to assume that there was no dispute as to what actually happened in substance as well as form which, of course, is inconsistent with the allegations of the complaint] as plaintiff would have us do, and instead to treat the transactions as loan transactions between the Bank and Leasco, would completely upset the 'pooling of interest' accounting treatment accorded the transactions, with the result that Leasco (and, indirectly, its shareholders including plaintiff) would suffer financial harm of a substantial nature."

If the issue were as broad as Continental would make it, then the matter of "pooling of interest" accounting treat-

---

6. "Although the federal courts generally are lenient in construing this portion of the rule [the demand requirement], occasionally complaints have been dismissed that seem to include sufficient facts to justify the conclusion that the demand requirement had been satisfied." 7A Wright and Miller, Federal Practice and Procedure: Civil § 1831 at 375 (1972).

7. For a general discussion, see Wright and Miller, *supra* at 377.

ment,[8] as well as other aspects of the exercise of business judgment adverted to, might pose difficult questions, or at least questions which we deem not to be involved here.

The sole, and narrow, issue which we find in this appeal is whether the district court abused its discretion in dismissing the action because of Nussbacher's failure "to meet the demand requirements of Fed.R.Civ.P. 23.1." We do not conceive that the resolution of this issue carries us into the merits questions presented by the matter of business judgment and whether this is a case of the "special character which stockholders may bring." *Swanson* v. *Traer,* 249 F.2d 854, 860 (7th Cir. 1957). These questions may be susceptible to resolution by summary judgment procedure, or they may require a trial. The short answer is that they have not been resolved at the district court level at this time and have no proper place in the appeal now before us.[9]

Turning then to the issue which is before us, we are satisfied that there was sufficient before the district court to preclude it in the exercise of proper discretion from dismissing the case on the 23.1 ground. Upon analysis, it appears to us that Continental is contending in effect that a demand had to be made.[10] This position would make the alternative prong of Rule 23.1 which permits the plaintiff to explain why he made no demand about as meaningless as it would have been for plaintiff to have made a demand in the present case. Not only did the board of directors adopt the position at a meeting that they would not have initiated the New York action, identical in practically all respects to the suit filed in Illinois, but the affidavit of the board chairman which was before the district court concluded by referring to "the determination of the Board of Directors of Leasco Corporation that [the Illinois action] maintained by Plaintiff Nussbacher is inconsistent with the best interests of the Corporation." This deci-

8. Continental asserts that if the transaction should be construed to be a loan, then Leasco could not continue to account for the acquisition on a "pooling of interests" basis. Nussbacher replies that this argument is a sham and that the significance of pooling of interests accounting is "highly inflated" by Continental. To the extent that the plaintiff is arguing that the method of accounting required due to the structure of a transaction (pooling of interests or purchase method) could not be a sufficient business reason, it would appear that she has misconceived the significance of the differences between these methods. See generally, Accounting Principles Board Opinion No. 16 (1970). The issue of the significance of the effect of the accounting method on the transactions, however, was not reached by the district court and does not compose a part of the issue before us.

9. This, of course, does not mean that there may not be cases which show on the face of the complaint that the action does not fall within the ambit of an equitable basis for stockholder intervention. In the present posture of the case, we attach no significance at this time to the extended arguments made to us, pro and con, as to whether the directors could be held liable, either criminally or civilly, with regard to violation of margin requirement regulations. The complaint charges director

complicity being directly involved in illegal transactions which were alleged to be to the detriment of the corporation.

Irrespective of the extent of exposure to personal liability that the directors of Leasco might have if the allegations of the complaint should be proven, there would seem to be appropriateness here to the words of Judge Coffin in concurring in *In Re Kauffman Mutual Fund Actions,* 479 F.2d 257, 269 (1st Cir. 1973), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107:

"I find it hard to imagine that a director, however, unaffiliated, who had participated, or under these circumstances knowingly acquiesced, in a major transaction, albeit for a corporate purpose, would authorize a suit, effectively against himself, claiming that the transaction violated the federal antitrust laws. Even independent watchdogs cannot be thought ready to sign a confession of that magnitude."

10. "Thus, the demand requirement is not a mere formality; it is a sound principle of corporate democracy designed to assure that major business questions are presented for resolution to those officers elected to manage the affairs of the corporation." Defendant's brief at 26–27.

sion and determination may well be proved to have been a sound evaluation when the merits questions are reached in this litigation; suffice it to say, the message is loud and clear that under no circumstances would the board of directors have approved the corporation bringing the action.

Both the district court and Continental on this appeal rely heavily on *Kauffman, supra.* Irrespective of the correctness of Nussbacher's contention that this case arose under Massachusetts law which "has long been noted for its conservative philosophy with respect to derivative actions" as opposed to more liberal treatment elsewhere, that case involved a significantly different factual situation inasmuch as it was not alleged that the majority unaffiliated directors also participated in or even approved of the acts of which complaint was made. Underlying facts were not shown to support claimed domination by the minority directors and it was held that demand was not excused. It was not sufficient there to speculate under the circumstances claimed that the majority of the board might not decide to take corporate action. Here it was apparent that the board members were inflexible in their position that corporate action against the defendant would not be taken. That, in our opinion, was demonstrated with the particularity required by Rule 23.1.

Accordingly, the judgment of the district court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.