**70**

Caryn J. MILLS and Susan M. Mills, not individually, but derivatively on behalf of Esmark, Inc., a Delaware corporation, Plaintiffs,

v.

ESMARK, INC., a Delaware corporation; Donald P. Kelly; Roger T. Briggs; Edward J. Harrison; William P. Carmichael; Geoffrey C. Murphy; Robert E. Palenchar; Jay D. Proops; Philip L. Thomas; Earl J. Grimm; Jack A. Vickers; Samuel B. Casey, Jr.; Lester Crown; Archie R. Dykes; Jerome C. Eppler; William B. Johnson; James J. O'Connor; Richard L. Terrell; Elmo R. Zumwalt, Jr., Defendants.

No. 81 C 1877.

United States District Court, N. D. Illinois, E. D.

June 18, 1981.

John C. DeWolfe, Jr., Richard J. Stevens, Lawrence C. Mills, Chicago, Ill., for plaintiffs.

Michael Shakman, Krupp & Miller, Robert J. Kriss, Mayer, Brown & Platt, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Caryn J. Mills and Susan M. Mills brought this derivative action as shareholders of Esmark, Inc. ("Esmark"), a Delaware corporation, alleging that certain officers of Esmark received cash payments and assignments of restricted Esmark stock and performance units in violation of the 1979 Stock Option Plan and Long Term Growth Plan adopted by the shareholders of Esmark, and in violation of the fiduciary

duty owed to the shareholders by the directors and officers. Plaintiffs have named as defendants, Esmark, the officers receiving the payments at issue, and the directors of Esmark, including both those who are members of Esmark's compensation committee and those who are not members thereof. This matter is currently before the Court on defendants' motion to dismiss or, in the alternative, for summary judgment for failure to comply with Rule 23.1 of the Federal Rules of Civil Procedure.

Rule 23.1 states in pertinent part:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may be properly asserted by it, the complaint shall be verified and shall allege ... with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

The only allegation in plaintiffs' complaint addressing the requirements of Rule 23.1 is found at paragraph 32, wherein plaintiffs allege that:

Plaintiffs have demanded that the Board of Directors of ESMARK recover from the officers the sums improperly paid to said officers. The Board of Directors has taken no action to make such recovery.

Defendants have asserted both technical and substantive objections to plaintiffs' attempts to meet the requirements of Rule 23.1. On a technical level, defendants argue that plaintiffs have not set forth with sufficient particularity, the efforts made by plaintiff to obtain the desired action and the reasons for their failure to obtain that action. This pleading defect, however, can easily be cured through amendment and in no way affects the defendants' ability to answer the allegations in the complaint. Indeed, defendants are fully aware both of the particularized efforts that plaintiffs have made to obtain relief from Esmark, and of Esmark's response.

Defendants' more serious objection arises from the fact that plaintiffs filed this action only three days after Esmark received notice of plaintiffs' demand, thus making it practically impossible for Esmark to have responded to the demand prior to the filing of this suit. On March 31, 1981, Esmark received a letter addressed to its Board of Directors dated March 26, 1981, from plaintiffs claiming that the increase in cash and cash equivalent remuneration paid the 29 highest paid directors and officers of Esmark in fiscal year 1980 over fiscal year 1979 was excessive and unreasonable and demanding that suit be brought against those 29 directors and officers to recover the increase. Esmark responded to the letter by arranging for a meeting between Esmark representatives and plaintiffs' counsel on April 3, 1981. Although that meeting was postponed until April 6, on April 3, defendant Edward J. Harrison ("Harrison"), Esmark's vice-president and general counsel, sent a letter to plaintiffs' counsel in which he advised them that their demand had been forwarded to members of Esmark's compensation committee and the board of directors and that the committee and board would review the demand at their next regularly scheduled meeting on May 28, 1981. Harrison forwarded a copy of plaintiffs' letter to each director and indicated in a cover letter that the matter would be reviewed at the May 28 meeting. On the same day, April 3, 1981, plaintiffs filed their complaint with this Court.

The meeting between plaintiffs' counsel and Esmark representatives took place, as scheduled, on April 6. At that time, plaintiffs' counsel were told about the May 28 board meeting and provided with materials explaining Esmark's compensation plans.

At the May 28, 1981, meeting of Esmark's board of directors a "special litigation committee" was formed, comprised of two Esmark directors who never received benefits under the compensation plans challenged by plaintiffs. This special committee was vested with the power of the board and was instructed to investigate plaintiffs' demand

and to determine Esmark's response. The special committee met, retained counsel, and instructed counsel to gather information regarding plaintiffs' claim. The special committee is next scheduled to meet on June 25, 1981.

■ The purpose of the demand requirement of Rule 23.1 is to allow a corporation to activate intracorporate remedies to address shareholder complaints prior to resorting to judicial intervention. *See generally*, Note, *Demand and Standing Requirements in Derivative Actions*, 44 U.Chi.L.Rev. 168 (1976) [hereinafter "Chicago Note"]. In theory, this salutory policy inures to the benefit of all involved. The dissident shareholder is provided with an opportunity to achieve his goal without incurring the expense of litigation; the directors of the corporation are allowed to occupy their status as managers of the corporation's affairs; the corporation is left to clean its own house, free from judicial entanglements; and the courts are relieved of the burden of prematurely resolving intracorporate disputes. Of course, it is also possible, indeed likely, that the corporation will refuse to take the action demanded by the shareholder. The purpose of Rule 23.1, however, is to give the corporation a fair opportunity to act on the demand, short of litigation.

■ In analyzing defendants' motion, it is essential to recognize that Rule 23.1 is a codification and synthesis of common law rules regarding shareholder derivative actions dating back to the nineteenth century. In the seminal case of *Hawes v. Oakland*, 104 U.S. 450, 460–61, 26 L.Ed. 827 (1882), a minority shareholder brought a derivative action only five days after making application to the directors to halt the activities at issue.[1] The Court affirmed the trial court's dismissal of plaintiff's action, and in so doing, outlined the principles which have governed derivative actions thereafter, stating:

> [B]efore the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself the redress of his grievances, or action in conformity to his wishes. *He must make an earnest, not a simulated effort, with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court.* If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.
>
> The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity, and an allegation that complainant was a shareholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could otherwise have no cognizance, should be in the bill, which should be verified by affidavit. (Emphasis added.)

These same principles recently were reaffirmed by the Court of Appeals for the Seventh Circuit in *Nussbacher v. Continental Illinois Nat'l Bank & Trust Co.*, 518 F.2d 873, 877 (7th Cir. 1975), *cert. denied*, 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 388 (1976), wherein the court stated:

> It may be wondered why counsel would not almost routinely take the course of making a formal demand, diligently and in good faith, and in so doing inform the board adequately of the basis of the claim he was asking them to enforce. *Adequate time should be allowed for a response and preferably a declination*

[1]. The shareholder was demanding that the Contra Costa Water-works Company cease furnishing the City of Oakland with water, free of charge.

*should be secured.* On the other hand, we cannot be unmindful of the proclivity of adversaries to raise all conceivably legitimate hurdles, and observance of the foregoing procedures, we must admit, would not necessarily avoid a Rule 23.1 challenge. (Footnote omitted.) (Emphasis added.)

The lesson taught by these cases and by Rule 23.1 is clear. Except when demand obviously would be futile,[2] dissident shareholders are required to make a sincere effort to obtain relief from the corporation prior to petitioning the court. In so doing, the shareholder must allow the corporation an adequate and reasonable amount of time in order to respond to the demand for relief. *See Siegal v. Merrick,* 84 F.R.D. 106 (S.D.N.Y.1979); 7A Wright and Miller, Federal Practice and Procedure: Civil § 1831 at 377; *Chicago Note, supra* at 172.

 On the other hand, countervailing concerns require this Court to establish certain limitations upon a corporation's right to review plaintiffs' demand. Just as the Supreme Court in *Hawes* counseled dissident shareholders to "make an earnest, not a simulated effort" to obtain remedial action from the corporation, the corporation must function under a reciprocal duty to make an earnest effort to consider the shareholder's demand and to decide upon a response within a reasonable time. The Court is well aware that it has become established practice in derivative actions for corporations to refer contested matters to a committee of outside directors for resolution. *See, e. g., Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.Supreme Ct. 1981). Neither the demand nor the response, however, should be an exercise in idle ceremony. When, as in the instant case, the shareholder has made a demand upon the corporation, it is incumbent upon the corporation to respond without delay. If the corporation does not respond within a reasonable period of time, the Court may be justified in presuming that the demand was futile and that the shareholder need wait no longer, *Zilker v. Klein,* 510 F.Supp. 1070 (N.D.Ill.1981).

Accordingly, defendants' motion to dismiss is granted without prejudice and with leave for plaintiffs to reinstate and amend their complaint upon receiving defendants' response. If defendants fail to provide a definitive and final response[3] to plaintiffs' demand by July 10, 1981,[4] the Court will presume that it would be futile for plaintiffs to wait any longer and will entertain a motion to amend and reinstate plaintiffs' complaint. It is so ordered.

2. Plaintiffs argue that it would be futile to wait for a response from defendants because of circumstances which lead plaintiffs to believe that the board of directors already has decided to oppose plaintiffs' demand. Plaintiffs refer to the following factors as causing them to conclude that their demand had been denied by the board of directors: (1) their initial meeting with Esmark representatives was postponed from April 3 to April 6; (2) at the meeting, defendant Harrison, who is not a member of the Esmark board of directors, made negative statements about the demand; and (3) a Wall Street Journal article on plaintiffs' lawsuit included a purported quotation from "a spokesman for Esmark" indicating that the shareholder suit was without merit. Plaintiffs cannot reasonably conclude from these facts that the Esmark board decided to oppose the demand, especially in light of the board's actions in forming a special litigation committee. This case is easily distinguished from the fact situation in *Nussbacher v. Continental Illinois Bank & Trust Co.,* 518 F.2d 873, 879 (7th Cir. 1975), *cert. denied,* 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 388 (1976), where the court found that the board of directors had sent a "loud and clear" message that they were inflexibly opposed to plaintiff's action. No such message has been communicated by the Esmark board in this case. Indeed, in *Nussbacher* the court noted that it is insufficient to merely speculate on the actions that a majority of the board might choose to take. 518 F.2d at 879. Given the facts in the instant case, plaintiffs' futility argument is nothing more than unsupported speculation and must be rejected.

3. A response indicating that review and investigation of plaintiffs' demand is continuing will not suffice.

4. On July 10, 1981, defendants will have had more than three months to act after receiving notice of plaintiffs' demand.