STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, APPELLEE, v. FARMERS STATE BANK OF DIX: VAN E. PETERSON, RECEIVER, APPELLANT: OMAHA NA-TIONAL BANK, CLAIMANT, APPELLEE.

FILED MAY 7, 1927.   No. 24909.

1. Banks and Banking: GUARANTY FUND: DEPOSITS. "Whether a transaction constitutes a deposit, within the meaning of the depositors' guaranty law, must depend upon the facts and circumstances surrounding the particular transaction." *State v. Atlas Bank*, 114 Neb. 646.

2. ———: ———: ———. "The law will look through all semblances and forms to ascertain the actual fact whether or not there has been a *bona fide* deposit, and, if not, the depositors' guaranty fund will not protect the transaction, no matter how it may be evidenced." *State v. Atlas Bank*, 114 Neb. 646.

3. ———: ———: ———. "Ordinarily, where a stockholder of a state bank, with knowledge that the bank is insolvent, or in an unsafe condition, at the instance and request of the bank officials obtains and places in or to the credit of the bank money, to enable the bank to meet a pressing obligation, and where the money is not placed in or at the command of the bank, for the use, safe-keeping or convenience of the stockholder, in the ordinary and usual course of business, such transaction does not constitute a good-faith deposit, within the meaning of the guaranty fund law, and is not protected by the depositors' guaranty fund." *State v. Atlas Bank*, 114 Neb. 646.

4. ———: ———: ———. Transaction examined, and *held* not to be a deposit protected by the guaranty fund.

APPEAL from the district court for Kimball county: J. LEONARD TEWELL, JUDGE. *Reversed, with directions.*

*Roland V. Rodman* and *C. M. Skiles,* for appellant.

*Smith, Schall, Howell & Sheehan, Gaines, Van Orsdel & Gaines* and *Warren H. Howard, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

PER CURIAM.

On February 20, 1924, a receiver was duly appointed in the above entitled action to take charge of and wind up the affairs of the Farmers State Bank of Dix, Nebraska, which, for convenience, will hereinafter be referred to as defendant.

In the course of liquidation, the Omaha National Bank filed a claim with the receiver for $3,000, based upon a certificate of deposit issued by the defendant, and prayed that it be allowed as a preferred claim and adjudged payable out of the depositors' guaranty fund. The trial court allowed the claim against the bank and further adjudged that it be paid out of the guaranty fund. No objection is made to the allowance of the claim against the bank, but the receiver appeals from that part of the judgment ordering the claim to be paid out of the guaranty fund.

It appears that defendant, on July 26, 1923, issued a certificate of deposit to one George A. Roberts for $3,000, due January 26, 1924. In due course of business and before maturity, Roberts assigned the certificate to the claimant as collateral security for an obligation held by it against Roberts. The certificate was in proper form and on its face bore no evidence of irregularity. Under the evidence, the bank is clearly liable for the amount of the certificate and interest. Is the depositors' guaranty fund liable for the payment of this certificate? A determination of this

576          NEBRASKA REPORTS.          [VOL. 115

State, ex rel. Spillman, v. Farmers State Bank of Dix.,

question involves an examination of the circumstances sur-rounding its issue.

It is the claim of the receiver that the certificate is not protected by the guaranty fund because the circumstances of its issue bring the transaction within the inhibition of section 8033, Comp. St. 1922, as reenacted by chapter 191, Laws 1923, which reads as follows:

"No claim to priority shall be allowed which is based up-on any evidence of indebtedness in the hands of or orig-inally issued to any stockholder, officer or employee of such bank, which represents money obtained by such stockholder, officer or employee, from himself or some other person, firm, corporation or bank in lieu of or for the purpose of effecting a loan of funds to such failed bank."

The record shows that R. A. Babcock was, at the time of the transaction and for several years prior thereto, an officer and stockholder of the defendant bank; that during the entire period the bank was hard pressed for funds to meet its current demands. While it had a capital of $20,000 and deposits of approximately $100,000, its cash reserve was way below the 15 per cent. requirement of the law. Taking account of its bad paper, it had lost more than its entire capital stock and surplus. For more than two years its cash reserve was habitually below the legal requirement. That Babcock knew of the straits in which the bank was placed seems clear.

With reference to this transaction, Babcock testified that he called Roberts over the telephone "and told him that we needed some money at Dix for the business there, and if he could spare me $3,000 that I would send him a note which I had in my note case at Potter to secure him for this $3,000, and he told me that he could arrange it to let me have the money." Babcock thereupon pledged as collateral a note of $4,000 and drew a draft on Roberts for $3,000, which he honored. This $3,000 was deposited to the per-sonal credit of Babcock. A short time thereafter Babcock drew his personal check for $3,000 payable to the bank

VOL. 115]        JANUARY TERM, 1927.        577

State, ex rel. Spillman, v. Farmers State Bank of Dix.

and had a certificate of deposit therefor issued in the name of Roberts. This certificate was dated January 26, 1923, and was renewed July 26, 1923. This latter certificate is the one in controversy. During the period of these transactions the cash reserve was way below the requirements of the law. On cross-examination, Babcock was asked: "Q. Then, did you pledge your personal property in order to give money to the Farmers State Bank of Dix, your company's bank, to give it money to take care of its current needs? A. I did. Q. That was what that $3,000 was there for? A. Yes, sir."

Stripped of all form, the transaction amounts to this: Defendant bank was hard up for ready money, of which Babcock was fully aware. He borrowed $3,000 and placed it in the bank to his credit for the purpose of bolstering up the immediate needs of the bank. Later, he drew his check in favor of the bank for the amount he had deposited and, instead of having the certificate of deposit issued to himself, he had it issued to Roberts, who in turn surrendered Babcock's obligation which he held and returned his collateral. This latter transaction is the same as though the certificate had been issued to Babcock and indorsed by him to Roberts. But if the transaction be considered as though Babcock had drawn his check to Roberts who had cashed and deposited the same in the bank and taken a certificate of deposit, the result would be the same. Roberts was also an officer of the bank, knew its pressing needs and had theretofore advanced large sums to bolster up its immediate demands. Under the facts in this record, it could not be said that Roberts was a depositor within the meaning of the guaranty law. At the present sitting of this court, we affirmed, without a written opinion, a series of claims against this same bank, based upon certificates of deposit issued to Roberts, and held that under the circumstances the advances made by Roberts were loans, and not deposits, within the protection of the guaranty law.

In *State v. Atlas Bank of Neligh,* 114 Neb. 646, the question presented was, in its essential features, substantially

the same as the one at bar. In the course of the discussion in that case it was said:

"Whether the transaction constitutes a deposit, within the meaning of the depositors' guaranty law, must depend upon the facts and circumstances surrounding the particular transaction. The law will look through all semblances and forms to ascertain the actual fact whether or not there has been a *bona fide* deposit, and, if not, the depositors' guaranty fund will not protect the transaction, no matter how it may be evidenced. Where a stockholder or officer of a state bank, with full knowledge that the bank is insolvent, or in an unsafe condition, at the instance of the bank's officers procures and places therein or to its credit money to enable the bank to meet a pressing demand upon it, and where the money is not placed in the bank for the use and convenience of the depositor, although the form of the transaction may appear as a deposit, it does not, in fact, constitute a deposit, within the meaning of the depositors' guaranty law, and is not protected by the depositors' guaranty fund,"—citing *Kidder v. Hall,* 113 Tex. 49; *First Nat. Bank of St. Cloud v. Hirning,* 48 S. Dak. 417.

We are quite convinced that Babcock did not place the money in the bank as a matter of safe-keeping or for his own use, but that his purpose was to help the bank in meeting a pressing demand upon it. It was not a deposit in the ordinary and usual course of business. It was a transaction within the inhibition prescribed by section 8033, Comp. St. 1922, and not protected by the guaranty fund.

An argument was presented by the claimant that the certificate of deposit was a negotiable instrument and it being an innocent purchaser would have recourse against the defendant and the guaranty fund. The question presented by this argument has been determined adversely to claimant's contention in so far as it applies to the liability of the guaranty fund. In *State v. Farmers State Bank,* 111 Neb. 117, it is said:

"The circumstances under which the guaranty fund may

be liable are entirely apart from the law pertaining to negotiable paper. A holder of a certificate of deposit in a bank who seeks to hold the guaranty fund liable for its payment must show that the transaction leading up to the issuance of the certificate was such that the law holds the guaranty fund liable for its payment. The mere fact that a certificate recites on its face that a certain sum has been deposited, or that officers of the bank may have stated that the deposit is protected by the guaranty law, does not make the guaranty fund liable for payment, if in fact a deposit has not been made, as that term is understood in the guaranty law. The banks have nothing to do with the guaranty fund as such. It is a fund raised by assessments against all state banks, administered by officers of the state to protect deposits in banks."

So far as participating in the guaranty fund, the claimant stands in the shoes of Babcock and Roberts, neither of whom could recover against the guaranty fund.

From an examination of the record, we conclude that the district court erred in allowing the claim as one payable out of the guaranty fund. The judgment is therefore reversed and remanded, with directions to enter judgment in accordance with this opinion.

REVERSED.