ASSOCIATION OF COMMONWEALTH CLAIMANTS, AN UNINCORPORATED ASSOCIATION, APPELLANT, V. KENLON HAKE ET AL., APPELLEES.

507 N.W.2d 665

Filed October 19, 1993.  No. A-92-039.

Robert R. Gibson, of Professional Legal Associates of Nebraska, P.C., for appellant.

James B. Cavanagh, of Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C., for appellees First National Bank of Omaha and Dennis O'Neal.

Rodney M. Confer and Trev E. Peterson, of Knudsen, Berkheimer, Richardson & Endacott; William D. Kuester, of Crosby, Guenzel, Davis, Kessner & Kuester; Thomas L. Kimer, of Faegre & Benson; Paul M. Schudel, of Woods & Aitken; Gerald Laughlin and Jill Robb Ackerman, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim; Gregory Perry, of Perry, Guthery, Haase & Gessford, P.C.; and David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellees Hake et al.

CONNOLLY, HANNON, and IRWIN, Judges.

IRWIN, Judge.

Appellant, Association of Commonwealth Claimants (ACC), as assignee of various depositors and creditors of the insolvent Commonwealth Savings Company, brought this action for damages against appellees, alleging mismanagement and other improprieties which resulted in the insolvency, collapse, and liquidation of Commonwealth. Appellees are former directors of the Nebraska Depository Institution Guaranty Corporation (NDIGC), financial institutions that employed the former directors, and alleged coconspirators.

Appellees demurred to ACC's third amended petition, claiming that ACC failed to state facts sufficient to constitute a cause of action, that ACC failed to allege that it made a proper demand on the receiver to bring this action, and that ACC was not the real party in interest. The district court for Lancaster County sustained the demurrers and dismissed this action. For the reasons set forth below, we affirm the order of the district court.

## FACTUAL BACKGROUND

Commonwealth Savings Company was an industrial loan and investment company located in Lincoln, Nebraska. On November 1, 1983, the Nebraska Department of Banking and Finance took possession of Commonwealth pursuant to state law regarding the insolvency of industrial loan and investment companies. See Neb. Rev. Stat. §§ 8-416 (Reissue 1991) and 8-187 (Reissue 1983). On November 8, the district court for Lancaster County issued an order declaring Commonwealth insolvent and appointed the Department of Banking and Finance as the receiver of Commonwealth pursuant to § 8-416 and Neb. Rev. Stat. § 8-198 (Reissue 1983).

Commonwealth deposits were guaranteed at up to $30,000 per account by the NDIGC. However, the NDIGC defaulted on its guarantees. In January 1985, the receiver and the NDIGC entered into an agreement providing that the NDIGC would transfer all of its remaining assets, worth $3 million, to the receiver. The agreement also provided that the receiver would indemnify the NDIGC, its officers, and its directors against any

claims arising out of the transfer of the NDIGC's assets.

The receiver also filed two tort claims against the State of Nebraska. These claims were filed with the State Claims Board pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissues 1981 & 1987 & Supp. 1983). The first claim was filed on behalf of the creditors of Commonwealth against the State, its officers, and its employees. The second claim was brought under the Nebraska Depository Institution Guaranty Corporation Act, Neb. Rev. Stat. § 21-17,127 et seq. (Reissue 1991). Both claims essentially alleged that state officers and employees committed negligent, willful, and wanton acts that resulted in the creditors' losses.

After two settlements proposed by the State Claims Board were rejected by the district court for Lancaster County, the receiver filed suit against the State of Nebraska on March 20, 1985, in the district court for Lancaster County. On April 26, the district court approved a settlement entered into by the receiver and the State. The terms of the settlement included a payment to the receiver of $8.5 million as a full and complete satisfaction of all claims held by the receiver against the State and its employees.

ACC and Claude T. Weimer filed the present action on October 28, 1987, seeking $58 million in damages from appellees. Weimer died in 1990 and is no longer a named party in this action. See, Neb. Rev. Stat. § 25-1405 (Reissue 1989); *Vogt v. Daily*, 70 Neb. 812, 98 N.W. 31 (1904). Appellees filed demurrers to ACC's amended petition, and the district court for Lancaster County sustained appellees' demurrers and dismissed ACC's petition on the grounds that the causes of action belonged to the receiver and that ACC had no standing to bring this action. ACC appealed this ruling to the Nebraska Supreme Court. On May 11, 1990, the Supreme Court ruled on ACC's claims as follows:

> We have determined that appellants' [Weimer's and ACC's] actions are derivative and that they have not suffered individual harm upon which they can sue directly. Their actions are properly brought by the receiver. However, the record shows that the receiver sued only the State of Nebraska . . . . If [Weimer and ACC] in fact state a

cause of action against the NDIGC or other defendants, this leaves Commonwealth, its creditors, and its depositors with a claim which the receiver failed or neglected to pursue.

. . . .

. . . [A]ppellants have stated a cause of action at least against the NDIGC based on statutory and common-law contractual liability toward Commonwealth and its depositors.

Although the receiver was the proper party to enforce that liability, the appellants are not left without a remedy in this situation. While § 8-199 gives the receiver broad authority to enforce claims on behalf of the bank, its shareholders, and creditors, we find that the shareholders and creditors must be afforded relief when the receiver fails or neglects to enforce a claim. Therefore, in remaining consistent with general corporate law and the federal common law, we hold that a depositor may bring a derivative action to recover for wrongs against the bank or financial institution, which wrongs have indirectly injured depositors, but only after having made an unsuccessful demand on the bank or its receiver to bring suit. [Citations omitted.]

In order for appellants to state a derivative action, their petition must allege the fact that a demand has been made on the receiver or that such a demand would be futile. The petition makes no such allegation, thereby failing to allege facts sufficient to constitute a cause of action.

*Weimer v. Amen*, 235 Neb. 287, 302-04, 455 N.W.2d 145, 155-57 (1990). The Supreme Court reversed the district court's dismissal of this action and remanded the cause with directions to permit Weimer and ACC to amend their petition.

On remand, ACC filed its third amended petition, in which ACC alleged that Weimer had requested the receiver and the court supervising the receiver to prosecute causes of action against the NDIGC, the officers and directors of the NDIGC, and "all others including officials of Nebraska and co-conspirators." ACC also alleged that requests to the receiver to pursue the above causes of action "were and continue to be

futile" because (1) the receiver had failed to file actions against any of the defendants named in the petition; (2) the counsel for the receiver had orally informed ACC that he was of the opinion that it was inappropriate for the receiver to bring the causes of action set forth in the third amended petition, and the receiver had continuously agreed with that opinion; (3) the receiver had entered into agreements with the NDIGC and the State; and (4) the court supervising the receivership was also the court that had approved the settlement between the Commonwealth receiver and the State.

Appellees demurred to ACC's third amended petition on the grounds that it failed to allege that a proper demand was made on the receiver, that it failed to state facts sufficient to constitute a cause of action, and that ACC was not the real party in interest. On December 13, 1991, the district court issued an order dismissing the case after sustaining the demurrers on the basis that ACC failed to make demand on the receiver prior to the commencement of the action and failed to allege circumstances that would excuse ACC from making such demand. ACC has timely appealed the order to this court.

We note at this point that while this case was before the Supreme Court in *Weimer*, the successor receiver assigned his causes of action against appellees to ACC. In addition, while this case was pending appeal in this court, ACC filed a petition to intervene in its capacity as assignee of the receiver. We will address the intervention issue after addressing the issues pending from the order of the district court.

## ASSIGNMENTS OF ERROR

ACC has assigned four errors on this appeal, which we have condensed into three assigned errors for purposes of this discussion. ACC alleges that the district court erred in (1) finding that ACC failed to make demand on the receiver, (2) finding that ACC failed to allege circumstances that would excuse demand, and (3) finding that ACC failed to state a cause of action against appellees.

## STANDARD OF REVIEW

In ruling on a demurrer, the court is to liberally construe the petition. If as so construed the petition states a cause of

action, the demurrer is to be overruled. *Matheson v. Stork*, 239 Neb. 547, 477 N.W.2d 156 (1991). In reviewing a ruling sustaining a demurrer, an appellate court must accept the truth of the facts well pled and the factual and legal inferences which may be reasonably deduced from such facts, but the court will not accept conclusions of the pleader. *Meyerson v. Coopers & Lybrand*, 233 Neb. 758, 448 N.W.2d 129 (1989); *Security Inv. Co. v. State*, 231 Neb. 536, 437 N.W.2d 439 (1989). In order to maintain a derivative action, a stockholder must allege in unmistakable terms that he made a demand upon the corporation or its receiver, unless circumstances excuse the stockholder from making such demand. See, *Weimer, supra*; *Kowalski v. Nebraska-Iowa Packing Co.*, 160 Neb. 609, 71 N.W.2d 147 (1955).

## DISCUSSION

*Derivative Action Requirements.*

In *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990), the Supreme Court held that ACC's claims in this case are derivative in nature. A derivative action is a suit by a shareholder to enforce a cause of action belonging to the corporation. Black's Law Dictionary 443 (6th ed. 1990). The court in *Weimer* also held that in order to state a cause of action, ACC must allege that a demand has been made on the receiver, or that such demand would have been futile. On appeal to this court, ACC argues both that it has satisfied the demand requirement and that it is excused from making a demand due to futility. We will address these arguments in turn.

*ACC's Claim that Demand Was Made.*

ACC did not allege in its petition that it personally made a demand on the receiver prior to bringing this action. In fact, ACC acknowledges in its brief that it made no such demand. Rather, ACC claims that its former coplaintiff, Weimer, made a demand on the receivership court and that Weimer's demand satisfies ACC's obligation to make a demand on the receiver.

ACC's claim that it made a demand on the receiver fails for several reasons. First, ACC itself did nothing with regard to making a demand on the receiver before bringing this action. Second, we are unaware of any authority stating that the

demand requirement is satisfied where the alleged demand is made by a person who is no longer a party to the action.

■ Third, even if we held that ACC's demand requirement could be satisfied by Weimer's alleged demand, ACC would not be able to establish that a demand was made because Weimer's application did not constitute a valid demand. "The demand notice and request should set forth the persons to be sued, and should describe all the causes of action which it is intended to assert. The demand must clearly state the corporate wrongs complained of and should state any facts upon which its charges were based." 13 William M. Fletcher et al., Cyclopedia of the Law of Private Corporations § 5968 at 178 (rev. perm. ed. 1991). See, *Starrels v. First Nat. Bank of Chicago*, 870 F.2d 1168 (7th Cir. 1989); *Renfro v. Federal Deposit Ins. Corp.*, 773 F.2d 657 (5th Cir. 1985); *Halprin v. Babbitt*, 303 F.2d 138 (1st Cir. 1962); *Stoner v. Walsh*, 772 F. Supp. 790 (S.D.N.Y. 1991).

In his application to the receivership court, Weimer stated that he had "reasonable grounds to believe" that he had "meritorious causes of action" against "members and directors of NDIGC," among others, and that the receiver "failed, refused, and neglected" to pursue these causes of action. However, Weimer's application failed to name specific persons or facts giving rise to such causes of action and also failed to specify the causes of action he allegedly held. In fact, the receivership court cited these defects as part of its basis for denying Weimer's application, stating: "The applicant has not furnished the court with any new or unique facts nor has he furnished the court with any new or different legal authorities to support his conclusions; he merely argues that he believes these proposed suits are valid."

The allegations in Weimer's application are mere conclusions and do not satisfy the requirement that the demand set forth the persons to be sued, the causes of action intended to be asserted, and the wrongs complained of. ACC's contention that Weimer's application to the receivership court satisfies the demand requirement is therefore without merit.

*ACC's Claim that Demand Is Excused.*

As noted above, the Supreme Court in *Weimer* held that

ACC may bring a derivative action against appellees if ACC can show that it would have been futile to demand that the receiver sue the appellees. ACC alleges that the district court erred in failing to find that ACC is excused from making a demand on the receiver under this futility exception. Where no demand was made because it was deemed futile, the petition must state with particularity the facts which excuse such demand. See, *Kowalski, supra*; 13 Fletcher et al., *supra*, 6008.

The district court found that ACC "failed to allege that the Receiver had an interest in not pursuing this litigation or that the Receiver acted in bad faith thus excusing [ACC's] failure to make demand." ACC claims that there are circumstances other than bad faith or self-interest which would render demand upon a receiver futile. ACC alleges that such circumstances existed in this case and that the district court thus erred in sustaining appellee's demurrers.

First, ACC alleges that demand is excused in this case because the receiver and the receiver's counsel informed ACC that they were of the opinion that pursuing claims against appellees would be inappropriate. In support of its contention that such circumstances excuse demand, ACC cites *Nussbacher v. Continental Ill. Nat. B. & T. Co., Chicago*, 518 F.2d 873 (7th Cir. 1975), *overruled by Kamen v. Kemper Financial Services, Inc.*, 908 F.2d 1338 (7th Cir. 1990), *rev'd* 500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991), and *In re Pittsburgh & Lake Erie R. Co. Sec. & Antitr. Lit.*, 392 F. Supp. 492 (E.D. Pa. 1975). ACC contends that the courts in these cases held that a shareholder who seeks to bring a derivative action is excused from making a demand where evidence reveals that the board of directors, the board's legal counsel, or both have been opposed to bringing the action. ACC contends that these cases support a finding that demand was excused in this case because the receiver and the receiver's legal counsel informed ACC (after this litigation had been initiated) that they had been opposed to bringing any action against appellees ever since the cause of action arose.

ACC's argument fails, however, because ACC mischaracterizes the holdings in these cases. Both *Nussbacher* and *In re Pittsburgh & Lake Erie R. Co. Sec. & Antitr. Lit.* involved

situations where shareholders alleged wrongdoing by the board of directors. In finding that demand was excused, the courts in those cases applied the generally accepted rule of corporate law which states that it is futile to request directors who are accused of wrongdoing to sue themselves. In the present action, however, ACC has not named Commonwealth directors or the receiver as defendants, but has named outside parties as defendants. With regard to this contention, ACC is not asking a wrongdoer to sue himself, as was the situation in *Nussbacher* and *In re Pittsburgh & Lake Erie R. Co. Sec. & Antitr. Lit.* ACC's contention that it is excused from making a demand on the receiver solely because the receiver and the receiver's counsel were opposed to bringing such action is thus without merit.

ACC also relies on *Zilker v. Klein*, 510 F. Supp. 1070 (N.D. Ill. 1981), for the proposition that demand is excused in a derivative action against a corporation's board of directors where the directors "failed to deal with" the subject matter of the action independently for 4 years after the derivative suit was filed. Brief for appellant at 14. ACC thus contends that because the receiver in this case failed to bring an action against appellees for nearly 4 years prior to the filing of this action, ACC is excused from making a demand on the receiver. Once again, ACC mischaracterizes the case it cites for support. In *Zilker*, the court held that demand was excused because the action was brought against the board of directors of the corporation, and as such, a demand that the directors sue themselves would be futile.

■ACC's above arguments regarding futility of demand are also contrary to a basic tenet of corporate law known as the business judgment rule. According to the business judgment rule, "courts are precluded from conducting an inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." 3A Fletcher et al., *supra*, § 1039 at 8 (Cum. Supp. 1993). The Nebraska Supreme Court has acknowledged the validity of the business judgment rule, stating:

> Within the limits of their authority directors possess full discretionary powers, and in the honest and reasonable

exercise of such powers are not subject to control by stockholders or by courts at the instance of stockholders. The accepted principle is that the wisdom and expediency of business policies and the methods of executing them are left to the discretion and decision of the board of directors. The established rule is that, in the absence of usurpation, or fraud, or of gross negligence, or transgression of statutory limitations, courts of equity will not interfere at the suit of dissatisfied stockholders merely to overrule and control the discretion of directors on questions of corporate management, policy or business.

*Royal Highlanders v. Wiseman*, 140 Neb. 28, 38, 299 N.W. 459, 464-65 (1941).

The business judgment rule applies equally to a derivative action where the corporation is in the hands of a receiver. See, *Landy v. Federal Deposit Insurance Corporation*, 486 F.2d 139 (3d Cir. 1973) (stating that the principles expressed by the business judgment rule applied with equal force to derivative actions by depositors of a bank under the control of a receiver); *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990). Neb. Rev. Stat. § 8-199 (Reissue 1983) provided that the receiver has the power to bring actions on behalf of the corporation. See *Weimer, supra*. In effect, the receiver steps into the shoes of the corporation's board of directors in this regard. See *id*.

ACC's arguments that demand would be futile in this case because the receiver was opposed to bringing an action against appellees or that the receiver refused to deal with the subject matter of this action run contrary to the business judgment rule. In effect, ACC is requesting this court to substitute its judgment for that of the receiver and the receivership court. We refuse to do so absent a showing of bad faith, fraud, or gross negligence. See *Royal Highlanders, supra*.

ACC has made several allegations of bad faith in its petition and in its arguments before this court. ACC first alleges that demand was futile because the receiver had a potential conflict of interest arising out of the indemnification agreement between the receiver and the NDIGC. As noted in the "Factual Background" portion of this opinion, this agreement provided that the NDIGC would transfer its remaining assets ($3 million)

to the receiver and that the receiver would indemnify the NDIGC and its officers and directors (some of whom are appellees in this action) against any claims *arising out of that transfer*. This court fails to see how this agreement results in a conflict of interest for the receiver. Clearly, the agreement does not anticipate nor require that the receiver indemnify appellees regarding this action prosecuted by ACC. ACC thus has not shown a conflict of interest or other circumstances that would excuse demand with regard to this agreement.

ACC also alleges that the settlement agreement between the receiver and the State pursuant to the action brought under the State Tort Claims Act created a conflict of interest for the receiver. This agreement released all state officers and employees from liability in exchange for $8.5 million to be paid to the receiver. ACC alleges that because the present action originally included state officers as defendants, the receiver had conflicting interests between "pursuing this suit as it was originally filed, and honoring its own settlement." Brief for appellant at 17. This argument is also without merit. Appellees in the present action are not state officers or employees. See, *Landy, supra*; *Weimer, supra*. The receiver's settlement of claims against nonparties to this action does not result in a conflict of interest.

### Demand Made in a Related Case as a Basis for Futility.

ACC also claims that it is excused from making a demand on the receiver because Weimer made a demand on the receivership court. In support of this proposition, ACC cites *Nussbacher, supra*, and *Zimmerman v. Bell*, 585 F. Supp. 512 (D. Md. 1984); ACC's reliance on these cases is also misplaced. In both *Nussbacher* and *Zimmerman*, the court based its finding of futility primarily on the fact that the board had participated in the wrongdoing that gave rise to the derivative action.

Even if we were to accept ACC's contention that a demand made in a related action excuses the demand requirement in a subsequent derivative action, we would conclude that ACC was not excused from making demand in this case. As discussed above, Weimer's application in the receivership proceedings did not constitute a valid demand, and therefore, in this case there

was no demand made in a related action.

## CONCLUSION

The court in *Weimer* held that a derivative action may only be maintained by ACC if ACC alleged in its petition the fact that it had made a demand on the receiver or facts revealing that such demand would have been futile. ACC has failed to do either in its third amended petition. Therefore, we affirm the order of the district court dismissing ACC's third amended petition for failure to state a cause of action.

■ Neb. Rev. Stat. § 25-854 (Reissue 1989) provides that if a demurrer is sustained, "the adverse party may amend, if the defect can be remedied by way of amendment, with or without costs, as the court in its discretion shall direct." ACC has acknowledged that it made no demand on the receiver prior to initiation of this action. We have also found that ACC's allegations of fraud or self-interest with regard to its futility argument are unfounded. Therefore, we cannot imagine any circumstances under which ACC could sufficiently allege a derivative cause of action against appellees in an amended petition. Because the defect in ACC's petition cannot be remedied by amendment, we affirm the trial court's ruling dismissing this action.

## INTERVENTION

In December 1988, while this action was pending appeal in *Weimer*, the successor receiver assigned his causes of action against appellees to ACC. However, ACC did not petition to intervene while this case was in the district court on subsequent remand. Rather, ACC, in its capacity as assignee of the receiver, has filed a petition in intervention while this action has been on appeal to this court. We thus address the issue of whether ACC is permitted to intervene in this action on appeal in its capacity as assignee of the receiver.

In *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990), the court held that the Commonwealth receiver was the real party in interest in this action. Due to the assignment, ACC, as assignee of the receiver, is now the real party in interest in this action. If ACC is allowed to intervene, the action will no longer be derivative, and the issues regarding derivative actions and

demand addressed in the Supreme Court, the district court, and this court will be rendered moot.

Neb. Rev. Stat. § 25-328 (Reissue 1989) addresses intervention as a matter of right. Section 25-328 states:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action . . . *before the trial commences.*

(Emphasis supplied.) ACC claims that it has a right to intervene under this statute as assignee of the receiver because the action was dismissed on a demurrer, and thus trial has not yet commenced in this action.

We find that ACC's argument requires a strained reading of § 25-328 and is contrary to well-established law in this state. Although trial has not taken place in this action, a final judgment has been rendered by the district court. Numerous decisions of the Supreme Court make it clear that intervention after judgment cannot be obtained as a matter of right under § 25-328. See, *Lincoln Bonding & Ins. Co. v. Barrett*, 179 Neb. 367, 138 N.W.2d 462 (1965); *State ex rel. City of Grand Island v. Tillman*, 174 Neb. 23, 115 N.W.2d 796 (1962); *Department of Banking v. Stenger*, 132 Neb. 576, 272 N.W. 403 (1937); *Kitchen Bros. Hotel Co. v. Omaha Safe Deposit Co.*, 126 Neb. 744, 254 N.W. 507 (1934). Therefore, we find that ACC, as assignee of the receiver, has no right to intervene in this action while it is on appeal to this court.

Although a party may not intervene after judgment as a matter of right, a court of equity may allow intervention after judgment. *Barrett, supra*; *Tillman, supra*. However, intervention after a final judgment should seldom be granted. *Barrett, supra*; *Tillman, supra*. The Nebraska Supreme Court has indicated that intervention should not be allowed where the party seeking to intervene had an opportunity to intervene at an earlier time, yet delayed in doing so:

> A right to intervene should be asserted within a reasonable time. The applicant must be diligent and not guilty of unreasonable delay after knowledge of the suit.

An intervener may not unreasonably delay the original parties, unduly retard the trial of the case, or render nugatory a judgment without a compelling cause, particularly when it has been partially performed. Consequently, persons who would otherwise be granted leave to intervene are denied consideration where they sit by and allow litigation to proceed without seasonably requesting leave to enter the case.

*Barrett*, 179 Neb. at 371, 138 N.W.2d at 465.

In this case, the receiver assigned his causes of action against appellees to ACC in December 1988. ACC had ample opportunity to file its petition for intervention in the district court after the Supreme Court remanded the cause in *Weimer*. However, ACC waited until June 1992, after the action was on appeal to this court, to file a petition for intervention. ACC thus sat by and allowed the litigation to proceed without seasonably requesting leave to enter the case in its capacity as assignee of the receiver. Had ACC petitioned to intervene in the district court, it could have avoided the issues regarding derivative actions and demand, thus saving the parties, the district court, and this court a substantial amount of time and expense. Consistent with *Barrett*, this court denies ACC's request to intervene in this action as assignee of the Commonwealth receiver.

For the above reasons, the district court's order dismissing this action is affirmed.

AFFIRMED.