ASSOCIATION OF COMMONWEALTH CLAIMANTS, AN UNINCORPORATED ASSOCIATION, APPELLANT, V. JAMES MOYLAN ET AL., APPELLEES.

517 N.W.2d 94

Filed June 3, 1994.   No. S-92-835.

Robert R. Gibson for appellant.

Rodney M. Confer and Trev E. Peterson, of Knudsen, Berkheimer, Richardson & Endacott; William D. Kuester, of Crosby, Guenzel, Davis, Kessner & Kuester; Thomas L. Kimer, of Faegre & Benson; Paul M. Schudel, of Woods & Aitken; Gerald Laughlin and Jill Robb Ackerman, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim; Gregory Perry, of Perry, Guthery, Haase & Gessford, P.C.; and David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellees Moylan et al.

James B. Cavanagh, of Lieben, Dahlk, Whitted, Houghton, Slowiaczek & Jahn, P.C., for appellees First National Bank and Dennis O'Neal.

BOSLAUGH, WHITE, FAHRNBRUCH, and LANPHIER, JJ., and CONNOLLY, HANNON, and IRWIN, Judges.

WHITE, J.

Association of Commonwealth Claimants appeals from the order of the district court sustaining appellees' demurrer and dismissing appellant's action. The district court held that appellant's action was barred by the 4-year statute of limitations set forth in Neb. Rev. Stat. § 25-207(3) and (4) (Reissue 1989). We affirm.

This is one of several cases related to the failure of Commonwealth Savings Company (Commonwealth). See, *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991);

*Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990); *Association of Commonwealth Claimants v. Hake*, 2 Neb. App. 123, 507 N.W.2d 665 (1993). Appellant is an association consisting of persons who suffered losses because of the failure of Commonwealth. One of the purposes for which appellant was formed is to represent the interests of those persons who may have causes of action related to the failure of Commonwealth. Appellees are directors of the former Nebraska Depository Institution Guaranty Corporation (NDIGC) who also served as employees of other state financial institutions. Appellees also include other individuals who allegedly engaged in wrongful conduct which caused the failure of NDIGC in 1985. The actions asserted by appellant in this case are intended to remedy the injuries caused by the failure of NDIGC.

This appeal concerns the date on which appellant's actions accrued and whether such actions are barred by the applicable statute of limitations. Appellant contends that the actions accrued on or after January 4, 1985—the date on which NDIGC closed. Appellees contend that the actions accrued on or before November 8, 1983—the date on which Commonwealth was declared insolvent and a receiver was appointed. Appellant filed its petition on December 5, 1988. The causes of action alleged by appellant are governed by the 4-year statute of limitations set forth in § 25-207(3) and (4).

Commonwealth was an industrial loan and investment company in Lincoln, Nebraska, in which appellant's members were depositors. On November 1, 1983, the Nebraska Department of Banking and Finance declared Commonwealth insolvent. On November 8, the department was appointed receiver and liquidating agent for Commonwealth.

At the time of its insolvency, Commonwealth was a member institution of NDIGC. NDIGC was a corporation formed in accordance with the Nebraska Depository Institution Guaranty Corporation Act, Neb. Rev. Stat. §§ 21-17,127 to 21-17,145 (Reissue 1991). NDIGC was formed to protect and guarantee deposits, savings, and shareholdings held by member institutions such as Commonwealth. (We will refer to these various interests as deposits, and the owners of these interests as

depositors.) Pursuant to the NDIGC plan, each Commonwealth deposit was guaranteed for losses up to $30,000. On January 4, 1985, NDIGC closed without having satisfied its obligations owed to the Commonwealth depositors.

On December 5, 1988, appellant filed its petition against appellees. In its petition, appellant contends that the wrongful acts of appellees contributed to the collapse of NDIGC and that because of the collapse of NDIGC, NDIGC was unable to reorganize Commonwealth and Commonwealth depositors were unable to collect on the guaranties. Appellant asserts several theories as a basis for its action, as well as a claim for injuries to the rights of appellant's members.

Appellees filed a demurrer arguing, in part, that appellant's actions are barred by the statute of limitations. The district court granted appellees' demurrer because it found that the actions were time barred. The district court further found that this defect could not be cured by amendment.

Appellant contends that the district court erred in (1) finding that the action was barred, (2) "implicitly" finding that the petition did not on its face negate a statute of limitations defense, and (3) holding that the defect cannot be cured by amendment.

In considering a demurrer, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994); *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993).

In an effort to thoroughly address the issues raised in this appeal, we find it necessary to take judicial notice of the court records of a case previously considered by this court. When cases are interwoven and interdependent and the controversy involved has already been considered and

determined by the court in the former proceedings involving one of the parties now before it, the court has a right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. Matters so judicially noticed are properly considered when determining the questions presented by a demurrer.

*Rhodes v. Yates*, 210 Neb. 14, 15, 312 N.W.2d 680, 681 (1981). Accord, *Fowler v. Nat. Bank of Commerce*, 209 Neb. 861, 312 N.W.2d 269 (1981); *Knapp v. City of Omaha*, 175 Neb. 576, 122 N.W.2d 513 (1963). We take judicial notice of the records from the former proceedings in *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990). Those proceedings, in which appellant was a plaintiff, involved actions for relief of injuries caused by the failure of Commonwealth and included allegations of wrongful conduct substantially similar to that alleged in the petition in this case. Additionally, in considering appellees' demurrer, the Lancaster County District Court took judicial notice of its prior related proceeding in In the Matter of the State Tort Claim of the Department of Banking and Finance of the State of Nebraska, Receiver of Commonwealth Savings Company, docket 380, page 10 (In the Matter of the State Tort Claim). As that record has been included as part of the record in the case at bar, this court need not take judicial notice of that prior proceeding, but we may consider its contents as it relates to our analysis. See *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992) (considering the record of a prior proceeding of which the lower court had taken judicial notice).

Before considering the statute of limitations issue, we must determine whether appellant acquired its causes of actions by assignment from the receiver. Both parties have addressed the issues raised in this case as if the causes of action were assigned by the receiver to appellant. It appears that this presumption arises from our decision in *Weimer, supra*, which also involved actions related to the failure of Commonwealth. In *Weimer*, the plaintiffs, which included appellant, alleged that the defendants, which included many of the appellees in the case at bar, allegedly caused the failure of Commonwealth thereby injuring the plaintiffs.

On appeal, this court considered whether the plaintiffs were

the proper parties to bring those actions. This court stated that wrongs committed by a banking institution's officers and directors are wrongs against the institution itself and thus constitute a liability which is an asset of the bank. This court stated that a receiver has a duty to secure all the assets of the insolvent institution for the benefit of the institution and its creditors. We explained that the damage to the depositors was indirect and that generally, depositors do not have an individual right of action against such wrongdoers. Accordingly, we held that the receiver was the only party authorized to assert those actions. *Id.*

In the present case, appellant emphasizes in its brief that the causes of action asserted in the instant case—inability to satisfy the guaranties—are not based on injuries for which recovery was sought in prior Commonwealth actions. On this point, we agree with appellant, and we also find that the alleged wrongs committed by appellees do not create a liability which is an asset of Commonwealth.

Based on our understanding of the act, the causes of action asserted by appellant in this case arise from the inability of NDIGC to satisfy the guaranties which NDIGC owed directly to depositors of Commonwealth. Unlike the actions asserted in *Weimer, supra*, the actions in the present case are based on obligations owed to a depositor, and the failure of NDIGC to fulfill those obligations does not constitute a wrong committed against Commonwealth. Thus, any actions based on these obligations are not assets of Commonwealth. See, *Bliss v. Bryan*, 123 Neb. 461, 243 N.W. 625 (1932) (discussing the purpose of an earlier Nebraska deposit-guaranty fund and stating that the fund was established for the benefit of the depositors of insolvent banking institutions); *State, ex rel. Spillman, v. First State Bank*, 117 Neb. 370, 220 N.W. 579 (1928) (addressing a depositor's claim for recovery from a guaranty fund); *State, ex rel. Spillman, v. Citizens State Bank*, 115 Neb. 593, 214 N.W. 6 (1927); *State, ex rel. Spillman, v. Farmers State Bank of Dix*, 115 Neb. 574, 214 N.W. 4 (1927); *State, ex rel. Spillman, v. Farmers State Bank*, 115 Neb. 46, 211 N.W. 178 (1926); *United Wire v. Bd. of Savings & Loan*, 316 Md. 236, 558 A.2d 379 (1989) (assuming but not deciding that

the obligations owed by a private insurer of failed savings and loan institution may run directly to the depositors); *Tafflin v. Levitt*, 92 Md. App. 375, 608 A.2d 817 (1992) (finding that the guaranties owed by the depository insurer were not assets of the banking institution). See, generally, 10 Am. Jur. 2d *Banks* §§ 424 and 425 (1963) (discussing the purpose for deposit guaranty funds and what parties are entitled to the protection of such funds); 1A Michie on Banks and Banking ch. 1, § 18 (1993) (stating the purpose of state depository guaranty funds); 66 Am. Jur. 2d *Receivers* § 450 (1973) and 65 Am. Jur. 2d *Receivers* § 139 (1972) (describing what causes of action a receiver is authorized to enforce on behalf of depositors); 1A Michie, *supra*, ch. 1, §§ 27 and 32 (generally discussing what parties constitute "depositors" of an insolvent bank such that those parties are entitled to collect on the deposit guaranty).

If the causes of action in the present case are not assets of the bank, but, rather, individual actions of the depositors, then appellant's ability to assert those actions is not dependent on an assignment from the receiver. Although appellant secured an assignment from the receiver of any remaining causes of action which the receiver may have held, we nonetheless find that a determination of this appeal is not dependent on that assignment.

As stated above, the central issue with which we are presented is whether appellant's actions are barred by the 4-year statute of limitations. Neither party disputes that the actions are controlled by § 25-207, which provides that actions for injuries to the rights of the plaintiff and actions for relief on the ground of fraud can only be brought within 4 years from the date on which such actions accrued. We therefore must determine when the actions accrued.

An action accrues and the statutory time within which the action must be filed begins to run when the injured party has the right to institute and maintain a lawsuit, although the party may not know the nature and extent of the damages. *Bauers v. City of Lincoln*, 245 Neb. 632, 514 N.W.2d 625 (1994); *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992); *L.J. Vontz Constr.*

*Co. v. Department of Roads*, 232 Neb. 241, 440 N.W.2d 664 (1989); *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216 (1987); *Lake v. Piper, Jaffray & Hopwood Inc.*, 219 Neb. 731, 365 N.W.2d 838 (1985).

According to its petition, appellant's six causes of action arise from acts which occurred prior to November 1983. Appellant contends, however, that the actions did not accrue against appellees until the depositors were injured. Specifically, appellant contends that Commonwealth depositors were not injured until NDIGC was obligated to satisfy the guaranties or until the date on which NDIGC closed and became unable to satisfy such obligations. Appellant argues that NDIGC did not have an obligation to pay on the guaranties until liquidation of Commonwealth was complete and it was finally determined that the depositors would not be paid in full from the assets of Commonwealth. Appellant contends that when NDIGC closed on January 4, 1985, liquidation of Commonwealth was still not complete.

Appellees, on the other hand, argue that NDIGC became obligated on its guaranties when Commonwealth was declared insolvent and the receiver was appointed to liquidate its assets. It is undisputed that Commonwealth was declared insolvent on November 1, 1983, and that a receiver was appointed on November 8.

The basis of the parties' opposing theories regarding when appellant was injured rests on the interpretation of the statutes governing the obligations of NDIGC. Statutory interpretation involves questions of law in connection with which an appellate court has an obligation to reach independent conclusions irrespective of the 'determinations made by the trial court. *Malzahn v. Transit Authority*, 244 Neb. 425, 507 N.W.2d 289 (1993); *In re Application of City of Lexington*, 244 Neb. 62, 504 N.W.2d 532 (1993); *Calvert v. Roberts Dairy Co.*, 242 Neb. 664, 496 N.W.2d 491 (1993).

In ascertaining the meaning of a statute, an appellate court must determine and give effect to the purpose and intent of the Legislature as demonstrated by the entire language of the statute. *In re Application of City of Lexington, supra; In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183

(1993). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; when the words of a statute are plain, direct, and unambiguous, no construction is necessary or will be indulged to ascertain their meaning. *Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994); *Malzahn, supra*; *Arizona Motor Speedway v. Hoppe*, 244 Neb. 316, 506 N.W.2d 699 (1993); *In re Application of City of Lexington, supra*; *In re Application of City of Lincoln, supra*.

In determining the meaning of a statute, an appellate court may conjunctively consider and construe a collection of statutes which pertain to a certain subject matter to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible. *AMISUB v. Board of Cty. Comrs. of Douglas Cty.*, 244 Neb. 657, 508 N.W.2d 827 (1993); *Metropolitan Life Ins. Co. v. Kissinger Farms*, 244 Neb. 620, 508 N.W.2d 568 (1993); *Arizona Motor Speedway, supra*; *In re Application of City of Lincoln, supra*.

The obligations of NDIGC are governed by the Nebraska Depository Institution Guaranty Corporation Act, under which NDIGC was incorporated and governed. See §§ 21-17,127 to 21-17,145. The Legislature has directed that the statutes within the act are to be liberally construed to effectuate the purposes set forth in § 21-17,128 and that those purposes shall provide a guide for the interpretation of the act. § 21-17,130.

The provisions of the act relevant to our discussion refer to the "member depository institution," the "corporation," and the "department." In the present case, Commonwealth is the member depository institution, NDIGC is the corporation, and Nebraska Department of Banking and Finance is the department. See § 21-17,131(6), (3), and (4). The guaranty provided by the NDIGC plan for each Commonwealth deposit was for losses up to $30,000.

A primary purpose of the act is to

provide a mechanism whereby the shareholdings, savings, and deposits of any member or depositor of a member depository institution shall be protected or guaranteed up to amounts which are established by the corporation and

> to avoid excessive delay in payment of such shareholdings, savings, and deposits and to avoid financial loss to members or depositors of depository institutions because of the insolvency or liquidation of a member depository institution[.]

§ 21-17,128(1).

As stated above, we are concerned with the date on which the obligations of NDIGC to depositors arose. According to the act, corporations are

> obligated to the extent of the *covered claims* existing as of the date that a member depository institution becomes insolvent and goes into voluntary liquidation, or as of the date of the determination of liquidation by order of the department, but such obligation shall include only that amount of each covered claim which is less than or equal to the maximum amount established by the corporation.

(Emphasis supplied.) § 21-17,135(1)(a).

To determine when appellant's actions accrued, we must determine when a "covered claim" arose and when NDIGC became obligated to satisfy that claim. The act defines "covered claim" as

> any unpaid shareholdings, savings, or deposits of a member or depositor of a member depository institution and which is not in excess of the applicable amounts to which sections 21-17,127 to 21-17,145 apply as established by the plan of operation of the corporation, if such depository institution becomes insolvent and goes into voluntary liquidation or is placed in involuntary liquidation ....

§ 21-17,131(5).

Finally, the act provides that "any claimant recovering under sections 21-17,127 to 21-17,145 shall be deemed to have assigned all of his rights or interest in his shareholdings, savings, or deposits with the insolvent member depository institution to the corporation to the extent of his recovery from the corporation." § 21-17,138.

The Legislature directs us to liberally construe the language of the act in light of the objectives of the Legislature, which includes the intent to provide a mechanism whereby creditors of

insolvent institutions may recover their losses without excessive delay. § 21-17,128. The plain language of the act contemplates claims for the guaranties arising when liquidation commences. This is illustrated by the language used to define a "covered claim" and to describe the obligations of NDIGC to satisfy the guaranties. Specifically, § 21-17,131(5) indicates that a covered claim arises when an institution "becomes insolvent and *goes into* voluntary liquidation or *is placed* in involuntary liquidation by order of the department." (Emphasis supplied.) Section 21-17,135(1)(a) also employs the language "goes into" liquidation regarding the obligations of NDIGC. This language conveys the intent that completion of the liquidation process is not a condition precedent to the existence of a covered claim and the corresponding obligation of NDIGC to pay that claim.

This reading of the act is consistent with the actual bylaws adopted by NDIGC regarding the processing of "covered claims." In the Matter of the State Tort Claim, *supra* (exhibit C, "Index, Transcript of Testimony and Exhibits Presented at May 25, 1984, State Claims Board Meeting" at exhibit 8). Article XVI of the NDIGC bylaws provides that the depositors must make claims for the insurance within 18 months of the appointment of a liquidating receiver. If a depositor fails to file a claim within 18 months, the bylaws provide that all rights the depositor may have against NDIGC are barred. Similar to the language employed in the act, the bylaws define claims from the date on which a liquidating agent is appointed, which occurs at the beginning of the liquidation process, rather than from the date of final liquidation.

We therefore find that the plain language of the relevant statutes, when read together in a consistent and sensible manner, means that a covered claim arises when the institution is declared insolvent and is placed in liquidation or voluntarily goes into liquidation. The act does not require that the depositor wait until liquidation is completed before the depositor may claim the guaranty. On the contrary, we find that by the plain language of the act, the Legislature intended to provide depositors with an immediate remedy for the deposits which are held by the receiver during the liquidation process. Compare *United Wire v. Bd. of Savings & Loan*, 316 Md. 236,

558 A.2d 379 (1989), and *United Wire v. State Deposit Ins. Fund*, 307 Md. 148, 512 A.2d 1047 (1986) (discussing two cases arising from the Maryland savings and loan crisis and implicitly stating that the statutory language, "[u]pon final liquidation . . . the Fund Director shall . . . determine the amount of insurable loss" and provide "for the payment or assumption of an insurable loss to each depositor," Md. Fin. Inst. Code Ann. § 110.1(a) (1992), provided that insurance guaranty obligations did *not* arise until liquidation was complete. See Md. Fin. Inst. Code Ann., §§ 10-110.1(c)(2) and 10-110(a)(2)(iii) (1992)).

The issue then becomes when Commonwealth was declared insolvent and when Commonwealth was placed into liquidation. According to the petition, the department declared Commonwealth insolvent on November 1, 1983, and on November 8, the department was appointed receiver. Although the petition fails to state when Commonwealth went into liquidation, our records in *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 147 (1990), state that on November 8, 1983, the Lancaster County District Court issued an order declaring Commonwealth insolvent and appointing the department as the receiver and liquidating agent of Commonwealth. See, also, *Association of Commonwealth Claimants v. Hake*, 2 Neb. App. 125, 507 N.W.2d 665 (1993).

When Commonwealth was declared insolvent and was placed into liquidation on November 8, 1983, the depositors' covered claims arose. Once there was a covered claim, NDIGC became obligated to satisfy the guaranty pursuant to § 21-17,135(a)(1). Once the obligations existed, appellant's causes of action accrued. Appellant's causes of action, therefore, accrued on November 8, 1983. The fact that appellant or its members did not attempt to enforce those obligations until 1988 did not prevent the running of the statute of limitations.

Appellant filed its petition on December 5, 1988. Appellant has not alleged facts sufficient to avoid the application of the 4-year statute of limitations. We therefore find that appellant's actions are barred.

The final issue we must address is whether the district court should have granted appellant leave to amend the petition.

When a demurrer to a petition is sustained, a court must grant to the plaintiff leave to amend the petition unless it is clear that no reasonable possibility exists that amendments will correct the defect. *Durand v. Western Surety Co.*, 245 Neb. 649, 514 N.W.2d 840 (1994); *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994).

Upon a review of the petition, we find that as to appellant's actions for injury to appellant's rights, there is no reasonable possibility that appellant could amend the petition to remedy the defect. With regard to appellant's actions based on fraud, we recognize that although appellant's petition does not address when it discovered the fraudulent acts, § 25-207 provides that such actions are not deemed to have accrued until discovery of the fraud. As discussed above, the alleged fraudulent acts occurred prior to November 1983, and the obligations of NDIGC on which appellant rests its theory of recovery arose on November 8, 1983. The only means by which appellant's actions could survive the application of the statute of limitations would be if appellant can amend the petition and allege that appellant did not discover the fraud until after December 5, 1984.

In the application of statutes of limitations, discovery occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action. *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993); *Broekemeier Ford v. Clatanoff*, 240 Neb. 265, 481 N.W.2d 416 (1992); *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985).

After a thorough review of the petition and consideration of the prior action between these parties, we find that there is no reasonable possibility that appellant could amend its petition to allege facts which would establish that appellant did not discover or could not have reasonably discovered the fraud until such a time that its petition would not be barred by the statute of limitations. The record in *Weimer, supra*, reflects that the allegations of fraud attributed to the appellees in the instant case were asserted by approximately 150 Commonwealth depositors in an action filed on June 29, 1984, against the State

of Nebraska. Moreover, the record in *Weimer* shows those plaintiffs acknowledged that at the time they filed their petition, NDIGC was unable to satisfy the guaranties on the Commonwealth deposits. The *Weimer* record also includes various claims filed by the Commonwealth receiver in early 1984 against the State of Nebraska. Although made against the State, these claims involved alleged fraudulent acts which are substantially related to the alleged wrongful acts that appellant relies upon in the present case. Specifically, those claims included allegations that the State had conspired with NDIGC directors to commit fraudulent acts, and these claims requested that the State be held liable for the guaranty amount on each of the Commonwealth deposits. The court records in *Weimer, supra*, indicate that public notice was provided on numerous occasions regarding these claims and also for the public hearings which were conducted on the proposed settlements of those claims. Considering such circumstances, appellant cannot realistically contend that it did not discover or could not have reasonably discovered the alleged fraud until such a time that its actions would not be barred by the statute of limitations.

We therefore find that the actions are barred by the statute of limitations and that the district court properly denied appellant leave to amend its petition. The decision of the district court is affirmed.

AFFIRMED.