KEVIN MILLIKEN, APPELLANT, V.
PREMIER INDUSTRIES, INC., APPELLEE.

691 N.W.2d 855

Filed February 8, 2005. No. A-04-575.

Rolf Edward Shasteen, of Shasteen, Linscott & Brock, P.C., for appellant.

Jenny L. Panko, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

Sievers, Moore, and Cassel, Judges.

Moore, Judge.

## INTRODUCTION

Kevin Milliken appeals from the Workers' Compensation Court review panel's affirmance of the workers' compensation trial court's award of benefits to Milliken. Specifically, Milliken claims that he was improperly denied an award of a waiting-time penalty and associated attorney fees sought pursuant to Neb. Rev. Stat. § 48-125 (Reissue 2004). The denial of a waiting-time penalty and attorney fees was based on the trial court's finding that there existed a reasonable controversy regarding the occurrence of an accident. For the reasons stated below, we reverse the judgment of the review panel of the Workers' Compensation Court and remand the cause with directions.

## BACKGROUND

Milliken was employed by Premier Industries, Inc. (Premier), to drop 200- to 300-pound blocks of insulation foam onto a table. Milliken had been doing this job for about 5 years when he began experiencing shoulder pain in January 2002. Milliken testified that he did not consult a doctor about this pain but that sometime in the early months of 2002, he did mention it to Premier's production manager at the time and to Jerry Meis, Premier's general manager. Milliken stated that he also told the son of Premier's owner about his shoulder pain but that he never told Richard Kapple, who took over as Premier's production manager in March. Although Milliken quit his job at Premier in September because of his "arms and different other things," he acknowledged he did not mention to anyone at Premier that he was quitting because of an injury. He immediately began working at Fleming Foods, loading groceries

onto a cart, but he lasted only 30 days in that job because of his arm pain. He has not been employed since that time.

Kapple testified that only a small part of Milliken's job involved reaching above his shoulders and that Premier's records did not show that Milliken had ever reported an injury to the company. Kapple stated that from the time he began his job as production manager in March 2002 until Milliken quit in September, Milliken performed his regular work duties and never mentioned that he was injured. Kapple testified that Milliken called Kapple and Meis several times after September to ask for his old job back and that Milliken never mentioned in the course of these calls that he would be unable to perform any of his old job duties. However, Kapple admitted that in January 2003, Meis informed him that Milliken believed he had injured himself at work.

Milliken first sought treatment from Dr. Brett Fischer in January 2003 for his shoulder problems. Dr. Fischer's January 28 letter states that an MRI of Milliken's shoulder revealed a rotator cuff tear and that Dr. Fischer believed with reasonable medical certainty that unless another specific incident could be shown, Milliken's injury was caused from repetitive overuse of his arm. Dr. Fischer was unaware of any other injury to Milliken's shoulder that could have caused the rotator cuff tear. Dr. Fischer's letter and an August 29 evaluation letter from Dr. D.M. Gammel indicate that the doctors were told that Milliken's duties at Premier involved repetitive overhead work.

Milliken filed his petition in the Workers' Compensation Court on February 11, 2003. Premier set up an appointment on August 27 for Milliken to see Dr. David Diamant, Premier's expert. Although Dr. Diamant also diagnosed Milliken with a rotator cuff tear, his report is silent as to causation. After receiving Dr. Diamant's report, Premier paid all indemnity benefits due Milliken through the time of trial.

A hearing was held in the compensation court on September 9, 2003, at which hearing the above evidence was adduced. At the start of the hearing, the parties stipulated that Milliken had been involved in an industrial accident which arose out of and in the course of his employment with Premier and that he had sustained an injury. The primary issue at trial was Milliken's entitlement to a waiting-time penalty and attorney fees.

The trial court entered its award for Milliken pursuant to the stipulations. The court stated on the record that there was a reasonable controversy regarding the occurrence of an accident, because Milliken had not sought medical treatment until January 2003, by which time he had left his employment with Premier and had had another job. The court also found that there was an issue of whether repetitive motion would have been sufficient to cause Milliken's injury and that Premier therefore had a right to have Milliken seen by Dr. Diamant. However, the trial court acknowledged that Dr. Fischer's January 28 letter was given to Premier and that it constituted notice, a finding that Premier does not dispute. We observe here that the precise date that Premier received Dr. Fischer's letter cannot be ascertained from the record.

With regard to the issue of reasonable controversy, the trial court, in its written order, stated only that "[t]here is a reasonable controversy. There are no penalties or attorney's fee due." The review panel affirmed the findings of the trial court, and Milliken appeals to this court.

## ASSIGNMENTS OF ERROR

Milliken asserts that the compensation court erred in (1) finding that he was not entitled to a waiting-time penalty or attorney fees and (2) failing to provide a "reasoned decision" as to the finding of a reasonable controversy, in violation of Workers' Comp. Ct. R. of Proc. 11 (2004).

## STANDARD OF REVIEW

Whether a reasonable controversy exists under § 48-125 is a question of fact. *Hale v. Vickers, Inc.*, 10 Neb. App. 627, 635 N.W.2d 458 (2001). Findings of fact by the Workers' Compensation Court trial judge are not to be disturbed on appeal unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party. *Id.*

## ANALYSIS

*Reasonable Controversy.*

Section 48-125(1) provides in relevant part as follows:

Except as hereinafter provided, all amounts of compensation payable under the Nebraska Workers' Compensation Act shall be payable periodically in accordance with the methods

of payment of wages of the employee at the time of the injury or death, except that fifty percent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability or after thirty days from the entry of a final order, award, or judgment of the compensation court. Such payments shall be sent directly to the person entitled to compensation or his or her designated representative except as otherwise provided in section 48-149. Whenever the employer refuses payment of compensation or medical payments subject to section 48-120, or when the employer neglects to pay compensation for thirty days after injury or neglects to pay medical payments subject to such section after thirty days' notice has been given of the obligation for medical payments, and proceedings are held before the Nebraska Workers' Compensation Court, a reasonable attorney's fee shall be allowed the employee by the compensation court in all cases when the employee receives an award.

█ Section 48-125 authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation. See, *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003); *Hale v. Vickers, Inc., supra.*

█ A reasonable controversy under § 48-125 may exist (1) if there is a question of law previously unanswered by the appellate courts, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *Dawes v. Wittrock Sandblasting & Painting, supra.* To avoid the penalty provided for in § 48-125, an employer need not prevail in the employee's claim, but must have an actual basis in law or fact for disputing the claim and refusing compensation. *Id.*

In the instant case, Premier can point to a number of factors which arguably could provide a factual basis for disputing Milliken's claim on the basis of causation, including Milliken's

lack of specificity in recalling his complaints to his supervisors, his continuation of work following his injury, his failure to mention any injury to Kapple or anyone else at Premier upon quitting his job, and his failure to seek medical care for a full year after his injury, during which time he briefly held another job. Nonetheless, the record in this case shows that Premier had notice in January or February 2003 of Milliken's injury, but sought no independent opinion until August 2003. Then, when Premier's expert failed to contradict Dr. Fischer's opinion on causation, Premier paid Milliken the full amount due on the eve of trial and stipulated that Milliken's injury occurred in the course and scope of his employment at Premier.

We observe here the contrast between Premier's actions following receipt of Dr. Fischer's letter and the actions of the employer in *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999). In *McBee*, the Nebraska Supreme Court found that a reasonable controversy existed prior to the physician's deposition finding that the employee's injury was work related. Because the employer began making temporary total disability payments within 30 days of the deposition, the court concluded that the review panel had correctly determined that penalties pursuant to § 48-125 should not have been imposed by the trial judge. In contrast, in the instant case, Dr. Fischer's report of January 28, 2003 (which was not rebutted), established that Milliken's injury was work related, yet the employer delayed approximately 7 months in making payments.

The Nebraska Supreme Court has held that "[t]he purpose of the 30-day waiting-time penalty and the provision for attorney fees in § 48-125 is to encourage prompt payment by making delay costly if the award has been finally established." *Gaston v. Appleton Elec. Co.*, 253 Neb. 897, 902, 573 N.W.2d 131, 135 (1998).

> "This provision for penalty was placed in the statute evidently with the object, not only to induce prompt payments after the award has been finally established, but, in case the award was contested, to compel prompt action on the part of the defendant in making his defense, and to defeat frivolous delays and chronic procrastinations often occurring in the course of legal proceedings; and, when any of these

conditions are found to exist, the penalty should be promptly imposed."

*Haake v. American Tool Cos.*, 8 Neb. App. 59, 67, 588 N.W.2d 839, 845 (1999).

We conclude that under the facts of this case, Premier had no actual basis for refusing to pay workers' compensation benefits to Milliken once Premier was put on notice of Milliken's injury, and that the trial court was clearly wrong in failing to award Milliken waiting-time penalties and attorney fees. We therefore reverse the judgment of the review panel, which affirmed the trial court's denial of waiting-time penalties, and remand the cause to the review panel for further remand to the trial court for a determination of penalties and fees.

*Reasoned Decision.*

 Milliken also asserts that the trial court erred in failing to give a reasoned decision with respect to his request for a waiting-time penalty and attorney fees. Because of our decision to reverse the compensation court's judgment on this issue, it is unnecessary to address this assignment of error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Burke v. McKay*, 268 Neb. 14, 679 N.W.2d 418 (2004).

## CONCLUSION

The record in this case shows that Premier was given notice of a work-related injury when it received Dr. Fischer's January 2003 letter, that Premier delayed seeking any further medical opinion until August, and that Premier did not make payment until after Premier's expert's opinion failed to support Premier's position that this was not a compensable injury. However, the clear dictate of § 48-125 is that if a defendant delays more than 30 days in making payment—in this case, from January to August—the defendant, to avoid a penalty, must be able to establish a reasonable controversy if the case comes to trial. Or, alternatively, the defendant must secure an agreement from the employee that there was a reasonable controversy at the time the payments are made. Here, Premier did neither. It simply stipulated to the compensability of the claim, which action had the effect of negating, for purposes of determining whether a reasonable controversy existed, all of the

possible defenses which it now argues establish a reasonable controversy. Under the facts of this case, the Workers' Compensation Court was clearly wrong in failing to award Milliken the penalties due him pursuant to § 48-125.

REVERSED AND REMANDED WITH DIRECTIONS.