DAVID J. MILLER, APPELLEE, CROSS-APPELLANT, AND CROSS-APPELLEE, V. COMMERCIAL CONTRACTORS EQUIPMENT, INC., AND ZURICH AMERICAN INSURANCE CO., ITS WORKERS' COMPENSATION INSURER, APPELLEES, CROSS-APPELLANTS, AND CROSS-APPELLEES, AND TRAVELERS INDEMNITY INSURANCE COMPANY, INTERVENOR-APPELLANT.

711 N.W.2d 893

Filed March 28, 2006. No. A-05-873.

608

Patrick B. Donahue and Dennis R. Riekenberg, of Cassem, Tierney, Adams, Gotch & Douglas, for intervenor-appellant.

Jeffry D. Patterson, of Bartle & Geier Law Firm, for appellee David J. Miller.

Jerald L. Rauterkus and Jason R. Yungtum, of Erickson & Sederstrom, P.C., for appellees Commercial Contractors Equipment, Inc., and Zurich American Insurance Co.

SIEVERS, IRWIN, and MOORE, Judges.

SIEVERS, Judge.

## I. INTRODUCTION

David J. Miller filed an action for workers' compensation benefits, alleging that he suffered compensable work accidents on April 9, 1999, and April 15, 2002, in the course of his employment with Commercial Contractors Equipment, Inc. (Commercial Contractors). On April 9, 1999, Zurich American Insurance Co. (Zurich) was Commercial Contractors' workers' compensation insurer, and on April 15, 2002, Travelers Indemnity Insurance Company (Travelers) was Commercial Contractors' workers' compensation insurer. Travelers was dismissed from the case before trial via a stipulation. The trial judge found that Miller had sustained an accident on April 15, 2002, thereby exposing Commercial Contractors to a claim for compensation under Travelers' coverage. Commercial Contractors and Zurich perfected an appeal to a three-judge review panel of the Workers' Compensation Court, and Travelers by motion sought leave to intervene in the appeal, which intervention the review panel allowed. After an unfavorable result from the review panel, Travelers has appealed to this court. We find that the review panel

committed plain error by allowing Travelers to intervene in the case after trial and during the appeal process.

## II. FACTUAL BACKGROUND

On April 9, 1999, Miller suffered a back injury in an accident arising out of and in the course of his employment with Commercial Contractors. At the time of the accident, Miller was employed as a "master mechanic," which required him to "push around heavy stuff" and "carry heavy stuff," including tools weighing 100 pounds. He testified that the labor required of a master mechanic was very physical and that he did a lot of bending, twisting, stretching, and climbing. At the time of trial, Miller had been employed as a master mechanic with Commercial Contractors from 1993 until his second surgery in December 2002.

On September 21, 1999, Dr. Andrew Messer performed an interdiskal electrothermal (IDET) procedure on Miller at the L4-5 level of his spine and an anterior lumbar interbody fusion at the L5-S1 level. Dr. Messer stated in his followup evaluation of Miller that 6½ weeks after that surgery, Miller appeared "very comfortable" and was "essentially free of any back pain" and "doing very well." On January 24, 2000, Miller was allowed to return to work with restrictions of no lifting below knee level and a lifting limit of 35 pounds. On April 10, Dr. Messer released Miller with no restrictions and recommended a "final visit" in 6 months.

Miller testified that he returned to work with Commercial Contractors as a master mechanic in April 2000 and that he did all the same jobs he was required to do before the surgery, but that he had to figure out how to do some things differently, such as heavy lifting. In February 2002, Miller had an "onset of pain that [he] had experienced before." Miller testified that he did not have an accident that gave rise to this onset and that there was no incident that caused him to start having back pain at that time. On April 15, he saw Dr. Messer, complaining of low-back pain. Dr. Messer's notes state that a "provocative discogram" confirmed that the L4-5 level of Miller's spine had "re-torn." On December 20, Miller had a second back surgery, which consisted of an anterior lumbar interbody fusion at the L4-5 level and an anterior stabilization.

Miller was released to return to work on January 6, 2003, on "very light duty." At the time of trial, Miller had not yet returned to full duty as a master mechanic. Miller had a third surgery, on July 23, which is not at issue in the present case.

## III. PROCEDURAL BACKGROUND

On January 2, 2003, Miller filed a petition in the Nebraska Workers' Compensation Court against Commercial Contractors and Zurich. We note that Commercial Contractors did not have independent counsel throughout the ensuing litigation and was represented by Zurich's counsel. Miller then filed an amended petition on June 20, naming Travelers and Phoenix Insurance Company (Phoenix) as additional defendants. The amended petition alleged that Miller had suffered an injury arising out of and in the course of his employment with Commercial Contractors on April 9, 1999. It further asserted that Miller returned to work without restrictions on April 10, 2000, and that on April 15, 2002, he stopped work and sought medical care for the "reappearance of lower back pain and disability symptoms." The amended petition alleged that "[i]n whole or in part, the cause of the reappearance of [Miller's] low back pain symptoms was the tasks of his employment with Commercial Contractors, specifically, frequent twisting, frequent bending, heavy physical exertion and heavy lifting." It also alleged that Miller's current low-back condition and any resulting disability were results of an aggravation of his 1999 back injury or a new injury condition of the same L4-5 disk injured in the 1999 workplace accident. Obviously, Miller, under the law to be discussed later, was seeking benefits from an "accident" in April 2002.

On August 14, 2003, nearly 2 months after the amended petition was filed, the parties, including Travelers, entered into a stipulation which we quote in its entirety because its exact language will later be crucial:

> COME NOW plaintiff and defendants, by and through their respective counsel of record, and hereby stipulate to the dismissal of Travelers Indemnity Company and Phoenix Insurance Company due to the lack of a present controversy and, in support thereof, state:
>
> 1. That plaintiff's Amended Petition alleges the reappearance of plaintiff's low back pain symptoms necessitated

cessation of plaintiff's work activities on or about April 15, 2002, and performance of low back surgery on or about December 20, 2002.

2. That defendants, Commercial Contractors Equipment, Inc. and Zurich American Insurance Company, have admitted the December 20, 2002 surgery and associated temporary total disability are related to an incident occurring on or about April 9, 1999.

3. That Travelers Indemnity Company and Phoenix Insurance Company did not provide worker's [sic] compensation insurance coverage for Commercial Contractors Equipment, Inc. on April 9, 1999.

Pursuant to the stipulation, the trial court entered an order on August 14 dismissing Travelers and Phoenix without prejudice "for lack of a present controversy."

At trial on September 29, 2003, Miller moved to amend his operative petition, the amended petition, to remove the allegation that the cause of his condition was an occupational disease, a matter of no import in this appeal. Commercial Contractors and Zurich then orally moved to continue the case in order for Travelers or Phoenix to take part in the trial. Counsel for Commercial Contractors and Zurich argued:

I guess based on the joint stipulation for dismissal . . . I would move that this matter be continued so that these entities, be it Travelers or Phoenix, be made a part of this and if there is a second injury in April of 2002, that . . . that be adjudged to be their responsibility. I mean, that is — the stipulation that we signed says that we accept. By "we," I mean Commercial Contractors and Zurich accept the 2002 December surgery, so that was the basis that these other individuals got out was that that surgery was accepted by us, so if there's some allegation there was another injury, I think they need to be in and I would move that we continue this case to allow those entities to be part of this trial or proceeding.

The trial court said that the joint stipulation appeared "to be more or less an agreement among the insurance companies for [Commercial Contractors]" and that Miller did not make "any express representations [in the stipulation] as to whether or not

. . . there was, in fact, a second accident." Thus, the trial court overruled the motion to continue and proceeded with the trial, at which Travelers was not present or represented.

## IV. TRIAL COURT'S DECISION

On March 25, 2004, the trial court entered an award finding that Miller was entitled to temporary total disability benefits and medical expenses as a result of the April 9, 1999, injury. The trial court found that Miller suffered a 15-percent loss of earning capacity from the 1999 injury. The trial court also found that Miller suffered an accident on April 15, 2002, which was an aggravation of the 1999 injury, not a recurrence, thereby implicating the Travelers' coverage. The trial court accepted the opinion of Dr. Messer and awarded Miller temporary total disability benefits and present and future medical expenses for the 2002 accident. The trial court denied an award of attorney fees, penalties, and interest because it found that there was a reasonable controversy as to whether Miller suffered an accident on April 15, 2002, and as to whether such accident was a recurrence or an aggravation of the 1999 injury.

## V. APPEAL PROCESS

On April 7, 2004, Commercial Contractors and Zurich appealed the March 25 award to the compensation court's three-judge review panel. On June 22, Travelers filed a "Petition in Intervention" alleging that Travelers was Commercial Contractors' workers' compensation insurer from June 11, 2001, to June 11, 2002, and that Travelers had an interest in the litigation because the trial court entered an award requiring Travelers, as Commercial Contractors' insurer, to pay workers' compensation benefits based upon Miller's accident of April 15, 2002. Travelers' petition also alleged that the trial court erred in (1) failing to adhere to its order dismissing Travelers and Phoenix based on the parties' stipulation, (2) interpreting the meaning of the stipulation, (3) failing to grant Commercial Contractors' motion to continue, (4) finding that Miller sustained an accident on April 15, 2002, and awarding benefits for such accident, and (5) failing to provide a reasoned decision. Travelers asked the review panel to reverse the trial court's March 25 award and find

that Miller was not entitled to any workers' compensation benefits for any accident falling within Travelers' coverage. Miller, Commercial Contractors, and Zurich filed a stipulation with the compensation court stating that they did not object to Travelers' petition in intervention.

On September 13, 2004, the review panel granted Travelers' petition in intervention, finding that Travelers should be allowed to intervene because it has a direct interest in the outcome of the litigation. The review panel issued its decision on June 24, 2005, finding in regard to Commercial Contractors' motion to continue that "[t]he insurance company which provided coverage for [the] defendant employer is not a necessary party," because under the Nebraska Workers' Compensation Act, "the employer is liable for the payment of indemnity, medical expenses, waiting time payments, and attorney's fees." As to the joint stipulation, the majority of the review panel concluded:

> The insurers, all of whom were represented by counsel, apparently made a calculated evaluation of the medical evidence and the law regarding aggravations versus recurrences [and] entered into the Joint Stipulation[,] and Travelers and Phoenix thereafter elected not to direct their counsel to be present for trial. Although the three insurers may have evaluated [Miller's] injury of April 15, 2002, as a recurrence rather than an aggravation, their collective evaluation was not binding on [Miller] or the trial court. [Miller] did <u>not</u> stipulate that his "December 20, 2002, surgery and associated temporary total disability are related to an accident occurring on or about April 9, 1999" . . . . [Miller] did stipulate that Zurich made that admission and that Travelers and Phoenix did not provide insurance coverage on April 9, 1999, but a careful reading of the Joint Stipulation demonstrates it really was among three insurance carriers contesting coverage. . . . Travelers and Phoenix cannot, by the Stipulation, invite dismissal as parties, elect not to participate at trial, and then complain about it later. . . .
>
> . . . .
>
> Likewise, [Miller] in the present case has no interest [in] which company insured [Commercial Contractors] on the

date of accident. If one insurer believes the date of accident was within the coverage period of another, it is incumbent upon that insurer to remain engaged in the litigation to establish the date of accident.

As will be explained later, we find that the majority of the review panel was precisely on target in its analysis of the import of the stipulation. With respect to the merits of Miller's claim, the review panel agreed fully with the trial judge and affirmed.

The dissenting judge on the review panel opined that the trial court should have sustained the motion to continue because the stipulation sent a "message" to Commercial Contractors that Miller was withdrawing his claim for the April 15, 2002, injury and that it need not prepare a defense to such claim.

On July 22, 2005, Travelers filed its notice of appeal with this court, causing our clerk to designate Travelers as the appellant. Commercial Contractors and Zurich jointly filed their notice of appeal 3 days later on July 25, causing them to be designated as the appellees (and as cross-appellants, as they filed a cross-appeal). Miller has filed a cross-appeal claiming that the trial judge should have awarded him attorney fees, interest, and waiting-time penalties.

## VI. ASSIGNMENTS OF ERROR

Travelers asserts, reassigned, that the trial court erred in (1) failing to grant the motion for continuance made at trial; (2) finding that Miller suffered a new injury on April 15, 2002, for the reason that such finding violated the stipulation for dismissal and order of dismissal and for the reason that such finding was contrary to the evidence and law; (3) finding that Miller was entitled to any workers' compensation benefits as a result of an injury on April 15, 2002; (4) finding that Miller "suffered an accident in 2002 and sustained disability as a result"; and (5) failing to provide a reasoned decision in that the trial court's award failed to explain the effect of the stipulation of the parties.

Commercial Contractors and Zurich (hereinafter collec-tively referred to as "Commercial Contractors") state in their brief that they join in Travelers' arguments for the above-named errors and that they also cross-appeal. However, notably, there are no specific assignments of error in Commercial Contractors' cross-appeal.

## VII. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002).

## VIII. ANALYSIS

### 1. TRAVELERS' APPEAL

We begin our analysis by determining whether Travelers was properly allowed to intervene in the appeal after trial, even though no party raises this issue. Travelers initially was a party to this case, but was dismissed pursuant to the parties' stipulation. Travelers then reentered the case after trial and decision when the compensation court review panel granted Travelers' petition in intervention. The Nebraska Workers' Compensation Act does not specifically address intervention, but we note that Neb. Rev. Stat. § 48-168(1) (Reissue 2004) provides that the Nebraska Workers' Compensation Court shall not be bound by any technical or formal rules of procedure, except as provided in that statute. Nonetheless, Neb. Rev. Stat. § 25-328 (Cum. Supp. 2004) allows intervention to occur in "any of the courts of the State of Nebraska." Thus, we look to the general rules of procedure (specifically § 25-328 in this matter) for guidance, as Nebraska courts have done in various other workers' compensation cases involving procedural issues. See, *Surratt v. Watts Trucking*, 249 Neb. 35, 541 N.W.2d 41 (1995) (use of Neb. Rev. Stat. § 25-824(2) (Reissue 1989) in evaluating claim that attorney fees should be awarded as sanction for frivolous claim); *Stewart v. Amigo's Restaurant*, 240 Neb. 53, 480 N.W.2d 211 (1992) (reference to Neb. Rev. Stat. § 25-1148 (Supp. 1991) in evaluating motion for continuance); *Bituminous Cas. Corp. v. Deyle*, 234 Neb. 537, 451 N.W.2d 910 (1990) (reference to Uniform Declaratory Judgments

Act in determining whether Workers' Compensation Court had authority to enter declaratory judgment); *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987) (reference to Neb. Rev. Stat. § 25-846 (Reissue 1985) in determining variance between pleading and proof), *disapproved on other grounds, Heiliger v. Walters & Heiliger*, 236 Neb. 459, 461 N.W.2d 565 (1990); *Armstrong v. Watkins Concrete Block*, 12 Neb. App. 729, 685 N.W.2d 495 (2004) (reference to Neb. Rev. Stat. § 25-852 (Reissue 1995) in analyzing procedure regarding amendment to pleadings); *Mabile v. Drivers Mgmt., Inc.*, 11 Neb. App. 765, 660 N.W.2d 537 (2003) (compliance with statutory requirements for summary judgment as set forth in Neb. Rev. Stat. § 25-1332 (Reissue 1995)).

The intervention statute at issue, § 25-328, provides:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought *in any of the courts of the State of Nebraska*, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, *and before the trial commences.*

(Emphasis supplied.)

Moreover, the Nebraska appellate courts have consistently held that intervention after judgment cannot be obtained as a matter of right under § 25-328, although none of the following cases are workers' compensation cases: See, *State ex rel. City of Grand Island v. Tillman*, 174 Neb. 23, 115 N.W.2d 796 (1962); *Department of Banking v. Stenger*, 132 Neb. 576, 272 N.W. 403 (1937); *Kitchen Bros. Hotel Co. v. Omaha Safe Deposit Co.*, 126 Neb. 744, 254 N.W. 507 (1934); *Association of Commonwealth Claimants v. Hake*, 2 Neb. App. 123, 507 N.W.2d 665 (1993), citing *Lincoln Bonding & Ins. Co. v. Barrett*, 179 Neb. 367, 138 N.W.2d 462 (1965).

In *Association of Commonwealth Claimants v. Hake, supra,* we held that the assignee of a receiver had no right to

intervene in the action while it was on appeal to this court. Intervention should not be allowed where the party seeking to intervene had an opportunity to intervene at an earlier time, yet delayed in doing so. *Id.* Clearly, this latter notion does little to aid Travelers' ability to intervene in the case at bar, as it began as a party to the case but then secured its own exit—for reasons which are not apparent to us. We also note that the only instance where we have found intervention to be allowed after judgment is in a court of equity. See *State ex rel. City of Grand Island v. Tillman, supra* (in exercise of its discretion and in furtherance of justice, court of equity may allow intervention after judgment to protect inherent rights of party seeking intervention). However, the Workers' Compensation Court does not have equitable jurisdiction, see *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005); thus, such court does not have equitable powers to allow intervention after judgment. Using the above procedural framework, we analyze Travelers' petition in intervention and whether such intervention could appropriately be granted after trial while the trial judge's decision was on appeal to the review panel.

Travelers was initially a party to the case, but by stipulation and by order of the trial court, it was dismissed before trial. The trial court entered its award on March 25, 2004, for benefits resulting from two accidents occurring on April 9, 1999, and April 15, 2002. Commercial Contractors filed its application for review by the review panel on April 7, 2004. Over 2 months later on June 22, Travelers filed its petition in intervention, and such petition was granted by the review panel on September 13.

We are aware that the Nebraska Workers' Compensation Act allows the compensation court to "make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the Nebraska Workers' Compensation Act." See § 48-168(1). The broad language of § 48-168(1) would certainly provide justification for timely intervention of insurers when there is a question of whether a worker has suffered a recurrence or aggravation of a previous work injury or an entirely new accident, particularly when the employer has changed insurers within the pertinent

timeframe. See *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987) (workers' compensation insurer allowed to intervene before trial). However, the procedural posture of this case raises not the simple issue of "Can Travelers intervene," but, rather, the issue of whether Travelers can intervene after trial and after Travelers voluntarily exited the case knowing that the amended petition obviously implicated its coverage. (The latter observation raises the issue of the meaning of the stipulation and the contents of the pleadings, which we shall get to shortly.) Therefore, at this point, it seems quite apparent that Travelers' intervention rests on a thin reed.

Allowing an insurer to be dismissed from an action, sit by while the trial proceeds, and then file a petition in intervention after the case has been tried, a judgment has been issued, and the other parties have applied for review does not square with the analogous principle that a party cannot complain of error which that party invited the court to commit. See *State v. Zima*, 237 Neb. 952, 468 N.W.2d 377 (1991). Nor can a party silently tolerate error, gamble on a favorable result, and then complain of the tolerated error when the result is unfavorable. See *id.* In this case, Travelers got itself out of the case, the case was tried without Travelers, the result exposed Travelers' coverage, and then, at the review panel level, Travelers sought reentry into the case. Obviously, Travelers used the stipulation to secure its exit from the case—which exit would not affect the underlying liability of Commercial Contractors which Travelers is contractually obligated to cover. Thus, Travelers gambled that an award could not or would not occur which would fall within its coverage of Commercial Contractors' workers' compensation liability.

We recognize that the employer's compensation insurer is clearly a proper party in workers' compensation litigation because the insurer is bound by the " 'awards, judgments, or decrees rendered against such insured' " under Neb. Rev. Stat. § 48-146 (Reissue 2004) regardless of the insured's participation at trial. See *Ramsey v. Kramer Motors, Inc.*, 155 Neb. 584, 587, 52 N.W.2d 799, 800 (1952). However, as indicated above, allowing the insurer to sit idly by and gamble on a favorable result, and then intervene and assert error when the trial result is unfavorable as concerns its coverage, does not comport with the

policy and procedure for intervention under Nebraska law. In *Lincoln Bonding & Ins. Co. v. Barrett,* 179 Neb. 367, 371, 138 N.W.2d 462, 465 (1965), the court said:

> A right to intervene should be asserted within a reasonable time. The applicant must be diligent and not guilty of unreasonable delay after knowledge of the suit. An intervener may not unreasonably delay the original parties, unduly retard the trial of the case, or render nugatory a judgment without a compelling cause, particularly when it has been partially performed. Consequently, persons who would otherwise be granted leave to intervene are denied consideration where they sit by and allow litigation to proceed without seasonably requesting leave to enter the case.

Here, Travelers exited voluntarily from the litigation when it knew or should have known of its potential exposure to a claim for benefits, given the allegations of the amended petition; gambled on a favorable result; and then reentered the litigation when the trial court's result indeed exposed it to such a claim.

 No one complains of the review panel's order granting intervention, simply, we suspect, because Miller does not care which insurer pays him and Zurich avoids paying benefits for the second surgery and resulting disability. And, Zurich and Travelers asserted at oral argument, in response to our questioning, that the best justification for permitting the intervention is that all parties agreed to it. In short, Travelers argues that because the parties in effect stipulated to Travelers' intervention at the appellate level, we should not concern ourselves with this issue. The general rule is that parties are bound by stipulations voluntarily made. See *Mischke v. Mischke,* 253 Neb. 439, 571 N.W.2d 248 (1997). In Nebraska, parties are free to make stipulations that govern their rights, and such stipulations will be respected and enforced by courts so long as the agreement is not contrary to public policy or good morals. See *id.* While morals are not involved here, public policy is strongly implicated—particularly for future cases. In the present case, the parties have agreed to a procedure which is directly contrary to the intervention statute at issue, § 25-328, which provides that intervention cannot occur after trial. Thus, the parties' agreement that Travelers be allowed to intervene violates the public policy found in § 25-328.

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *Dike v. Dike*, 245 Neb. 231, 512 N.W.2d 363 (1994). An appellate court always reserves the right to note plain error which was not complained of at trial or on appeal. *Russell v. State*, 247 Neb. 885, 531 N.W.2d 212 (1995) (Lanphier, J., dissenting). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995).

The integrity and fairness of the judicial system require that the parties to a trial determine the issues, adduce the evidence, make the record, know who their adversaries are, and then, if they choose, pursue an appeal on the issues tried in the lower court by the parties to the trial. See *Zwygart v. State*, 270 Neb. 41, 699 N.W.2d 362 (2005). Obviously, these policy considerations for the orderly administration of justice underlie the requirement of § 25-328 that intervention occur before trial. To sanction the procedure used in this case flies in the face of § 25-328 and the policy considerations which require that intervention occur before trial. It was plain error for the review panel to allow Travelers to intervene after the case was tried, a judgment was rendered, and an appeal was taken by another party. Therefore, we dismiss Travelers' appeal and do not address its assignments of error.

## 2. COMMERCIAL CONTRACTORS' CROSS-APPEAL

We now turn to Commercial Contractors' arguments on cross-appeal. There is no specific section designating assignments of error in Commercial Contractors' brief on cross-appeal as required by Neb. Ct. R. of Prac. 9D(4) (rev. 2001). Instead, within its brief on appeal, and outside its brief on cross-appeal, Commercial Contractors "adopts and joins in" Travelers' first through fifth "argument[s]" located on pages 11 through 22 of Travelers' brief, although then making arguments rather similar to Travelers'. See brief for appellee Commercial Contractors at 5. Therefore, Commercial Contractors advances the same claims as Travelers. But, given our likely unanticipated dismissal of

Travelers, we determine that fairness demands that we address Commercial Contractors' claims.

### (a) Stipulation

Commercial Contractors argues that "[a]s a matter of law, [Miller] is estopped from contradicting the stipulation he voluntarily executed with the other parties, especially because the other parties relied and acted upon the stipulation." Brief for appellee Commercial Contractors on cross-appeal at 6. In analyzing this argument, we recognize that the Workers' Compensation Court is not a court of equitable jurisdiction and that estoppel is an equitable remedy. See *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005).

Nonetheless, we address the meaning of the stipulation because Commercial Contractors also claims, "This case should be reversed and remanded for a new trial because the trial court committed plain error in its interpretation of the joint stipulation and its entry of the corresponding order." Brief for appellee Commercial Contractors on cross-appeal at 11.

The construction of a stipulation is a question of law. *Foote v. O'Neill Packing*, 262 Neb. 467, 632 N.W.2d 313 (2001). The stipulation entered between Commercial Contractors, Zurich, Travelers, Phoenix, and Miller stated:

> COME NOW plaintiff and defendants, by and through their respective counsel of record, and hereby stipulate to the dismissal of Travelers Indemnity Company and Phoenix Insurance Company due to the lack of a present controversy and, in support thereof, state:
>
> 1. That plaintiff's Amended Petition alleges the reappearance of plaintiff's low back pain symptoms necessitated cessation of plaintiff's work activities on or about April 15, 2002, and performance of low back surgery on or about December 20, 2002.
>
> 2. That defendants, Commercial Contractors Equipment, Inc. and Zurich American Insurance Company, have admitted the December 20, 2002 surgery and associated temporary total disability are related to an incident occurring on or about April 9, 1999.

3. That Travelers Indemnity Company and Phoenix Insurance Company did not provide worker's [sic] compensation insurance coverage for Commercial Contractors Equipment, Inc. on April 9, 1999.

The clear language of the stipulation is that the parties stipulated only to what was going to happen—the dismissal of Travelers and Phoenix due to the lack of a present controversy. The parties did set forth the three enumerated paragraphs of "support" quoted above for the court's consideration to justify the stipulated action. Such justification included the fact stated in paragraph 2 that Commercial Contractors admitted that the 2002 injury was "related to" the 1999 accident. Brief for appellee Commercial Contractors on cross-appeal at 6. The first problem is that Zurich and Travelers' agreement that Miller's 2002 surgery and disability were "related to" the 1999 accident is really quite meaningless. Agreement on the nebulous phrase "related to" does not constitute agreement on the causation of Miller's present condition, because "related to" is likely insufficient to establish the fact that the 1999 accident caused Miller's 2002 problems. See *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 715, 513 N.W.2d 361, 368 (1994) (doctor's opinion that noise exposure on job " 'may be related' " to hearing loss is insufficient proof of causation as matter of law).

But, most significantly, Miller does not agree with the "related to" language in paragraph 2; he agrees only that Zurich and Travelers agreed to agree that the 2002 claim was "related to" the 1999 claim. By the plain language of the stipulation, Miller did not stipulate that the 2002 injury was a recurrence of the 1999 injury or even that it was "related to" the 1999 accident—only Zurich and Travelers did that. Because Commercial Contractors' construction of the stipulation is so tortured and strained, it cannot be said that Commercial Contractors reasonably relied upon the stipulation. See *Breslow v. City of Ralston*, 197 Neb. 346, 249 N.W.2d 205 (1977) (only reasonably justified reliance will create an estoppel). Additionally, Miller's amended petition clearly alleged that his "current lower back condition . . . is the result of an aggravation of his 1999 back injury and/or a new injury condition to the same L4/5 disc injured in [Miller's] 1999 workplace accident." As a result, Travelers was on notice

that Miller's claim included a claim for benefits within its coverage. A pretrial statement filed by Commercial Contractors on September 24, 2003, after the stipulation and the dismissal of Travelers, states that Miller's average weekly wage at the time of the 1999 accident was $1,100 and at the time of the 2002 accident was $1,500—providing further evidence that it was to Miller's benefit to focus on the April 2002 incident's being an aggravation or new accident, even somehow imagining that the amended petition was not enough to provide Travelers notice that its coverage was potentially exposed. Therefore, there is no evidence that Miller, by the stipulation or any other conduct, abandoned his claim of a new injury or aggravation in 2002. Estoppel (as argued by Commercial Contractors) is not applicable here.

Finally, the stipulation was not binding on Miller or the trial court in determining whether Miller's condition in 2002 was an aggravation, recurrence, or new injury because, as stated above, Miller agreed only that Zurich and Travelers had agreed to agree that his 2002 condition was "related to" his 1999 injury. At its most basic level, paragraph 2 of the stipulation is essentially a matter of "So what?" from Miller's viewpoint. If two insurers want to agree to something about his claim, it does not matter to Miller, because as long as Commercial Contractors is found liable, he cares little about which insurance company had the coverage at the time of his injury.

(b) Law of Case

Commercial Contractors argues, "The August 14, 2003 order established the 'law-of-the-case' and should have precluded the trial court from reconsidering whether the December 20, 2002 surgery and associated temporary total disability were caused by the April 1999 incident." Brief for appellee Commercial Contractors on cross-appeal at 9. The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998); *In re Application of City of Lincoln*, 243 Neb. 458, 500 N.W.2d 183 (1993).

Again, as we have previously stated, Miller did not stipulate that the 2002 injury was "caused by" the 1999 accident. He merely stipulated that Travelers and Phoenix could be dismissed

because there was no present controversy and, in support of such dismissal, that Zurich and Travelers agreed to agree about some degree of causation—albeit a likely insufficient level of causation. The order dismissing Travelers did not preclude the trial court from considering the issue of whether the 2002 injury was caused by an aggravation or a completely new injury, because the causation of Miller's condition in 2002 was not determined in the order dismissing Travelers and Phoenix. There simply was no reconsideration at trial of issues substantially similar to those resolved in the order dismissing Travelers—Travelers' liability is not a specific finding of the trial judge, but a matter of contractual insurance coverage as applied to the trial decision. Thus, the law-of-the-case doctrine does not apply here. Commercial Contractors' argument is without merit.

### (c) Loss of Earning Capacity

Commercial Contractors argues that the trial court erred in finding that Miller sustained a loss of earning capacity as a result of the April 9, 1999, injury. The trial court found that Miller suffered a 15-percent loss of earning capacity and awarded him permanent partial disability benefits resulting from the 1999 accident. Permanent partial disability benefits pursuant to Neb. Rev. Stat. § 48-121(2) (Reissue 2004) are measured not by loss of bodily function, but by reduction in or loss of earning power or employability. See *Davis v. Goodyear Tire & Rubber Co.*, 269 Neb. 683, 696 N.W.2d 142 (2005). Earning power, as used in § 48-121(2), is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the worker to earn wages in the employment in which he or she is engaged or for which he or she is fitted. *Davis v. Goodyear Tire & Rubber Co., supra.*

The trial court considered Dr. Messer's 9-percent whole body impairment rating of Miller, as well as Miller's testimony, his educational background, his history of labor-intensive work, and his general medical condition, in determining whether Miller suffered a loss of earning capacity. The trial court stated that the record did not contain any medical opinion permanently re - stricting Miller's work activities as a result of the 1999 accident, and Dr. Messer released Miller thereafter without restrictions.

However, the trial court found that although Miller "testified that he did all of the same jobs that he did prior to the injury upon return to his work," Miller "approached his job in a different manner as he incorporated or utilized a 'better way' to perform the essential functions of his position." Consequently, the trial court found that Miller's "change in approach to his job" was necessitated by the 1999 accident, and assigned Miller a 15-percent loss of earning capacity.

There is evidence in the record that when Miller returned to work after the 1999 accident, although he performed all the tasks of his employment that he did before the accident, he had to do some things differently, such as "us[ing] a crane for everything," because he could not carry things like he used to and he could not lift as much weight. Miller testified that he had to "think of a better way to do" some things "because [his] body wouldn't take [the heavy lifting and carrying] anymore." Miller imposed his own restriction not to lift more than 100 pounds after the 1999 accident (he lifted 150 to 200 pounds before the accident). He also testified that there were some things that he had to "get help with" after the accident which he used to do by himself before the accident. The trial judge took this evidence into account, properly viewing Miller's change in approach to his work as a factor in his capacity to perform the tasks of the work, and clearly, the court can rely on a claimant's testimony to determine the degree of disability. See *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996).

Although Miller received a raise in June or July 2000, after the accident, such raise is not determinative of whether he sustained a loss of earning capacity. See *Davis v. Goodyear Tire & Rubber Co.*, 269 Neb. 683, 696 N.W.2d 142 (2005) (if employee receives same or higher wages after injury, it is indicative, although not conclusive, of fact that his or her earning power has not been impaired). Our standard of review for factual findings of the Workers' Compensation Court is "very deferential." *Id.* at 689, 696 N.W.2d at 148. We will not substitute our view of the facts for that of the compensation court if the record contains sufficient evidence to substantiate the factual conclusions reached by the compensation court. See *id.* Because there is sufficient evidence to support the trial court's findings,

the trial court was not clearly wrong in determining that Miller sustained a 15-percent loss of earning capacity because he was unable to perform his job in the same manner as he did before the 1999 accident. See *id.*

### (d) Aggravation Versus Recurrence

 Commercial Contractors argues, "This case should be reversed and remanded for a new trial because the trial court erred in determining that an aggravation or a new injury occurred on April 15, 2002 as this finding is contrary to the evidence." Brief for appellee Commercial Contractors on cross-appeal at 13. When a subsequent injury aggravates a prior injury, the insurer at risk at the time of the subsequent injury is liable. *Miller v. Meister & Segrist*, 255 Neb. 805, 587 N.W.2d 399 (1998). But, if the subsequent injury is a recurrence of the prior injury, the insurer at risk at the time of the prior injury is liable. *Id.* A finding in regard to causation of an injury is one for determination by the compensation court as the finder of fact. *Id.* In testing the sufficiency of the evidence to support the findings of fact made by the compensation court, the evidence must be considered in the light most favorable to the successful party. *Vega v. Iowa Beef Processors*, 270 Neb. 255, 699 N.W.2d 407 (2005). As the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, even if the testimony is not live testimony. See, *id.*; *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003).

With regard to the 2002 injury, the trial court considered whether such injury was a recurrence or aggravation of the 1999 injury or an independent injury occurring "free of any employment influence whatsoever given the progressive traits of [Miller's] underlying degenerative disc disease." The trial court found that Miller suffered a second accident on or about April 15, 2002. The court summarized its reasoning as follows:

> [T]he demonstrated capacity of [Miller] to engage in heavy labor after reaching maximum medical improvement from the 1999 accident; the lack of a belief by his treating physician that future medical treatment would be necessary; the absence of any evidence suggesting that [Miller] remain[ed] symptomatic on any ongoing basis after his return

to work; the passage of several years without [Miller's] apparently missing any work or feeling the need for treatment; all combine to effectively persuade the trier of fact that the April 15, 2002 incident was the product of an aggravation or independently contributing accident as defined under the Nebraska law.

The trial court also found that the opinion of Dr. Messer was "persuasive," and it accepted such opinion over the opinion of a medical expert for the defense. The court found that Dr. Messer had opined that the 2002 accident was causally related to Miller's work at Commercial Contractors.

■ Commercial Contractors argues that the trial court's finding that there was an aggravation or new injury in 2002 was contrary to the evidence because there was medical evidence in the record showing that "in the middle of the 2-year period" referred to by the trial court as a timeframe after Miller's 1999 surgery during which he was asymptomatic, Miller sought medical treatment for " 'continued' " pain and exacerbation of his chronic lumbar pain. Brief for appellee Commercial Contractors on cross-appeal at 14. In looking at the evidence used by Commercial Contractors in its argument, we find that although treatment notes from Miller's visit to a physician on June 18, 2002, state that Miller reported having done well after his 1999 operation until "approximately 1½ years later in mid-2001, when he began noticing a gradual onset of worsening back pain," there is no evidence in the record that Miller saw a physician for that complaint at that time. His first such visit subsequent to being released for work without restrictions after the 1999 surgery was on April 15, 2002. Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Swanson v. Park Place Automotive*, 267 Neb. 133, 672 N.W.2d 405 (2003). Despite the evidence that Miller had pain 1½ years after his 1999 surgery, the review panel did not err in determining that the trial court's finding of an aggravation was not clearly wrong.

■ Commercial Contractors also argues that Dr. Messer offered conflicting opinions—one which stated that the 2002 injury was a recurrence and one that stated it was an aggravation or new injury. Where the testimony of the same expert is conflicting,

resolution of the conflict rests with the trier of fact, the single judge. See *id.* Here, the trial court accepted Dr. Messer's opinion which stated:

Miller's low back condition on December 20, 2002, is fairly characterized as either a new injury to his L4/5 disc, or an aggravation of the 1999 L4/5 disc injury, but no matter how one chooses to characterize . . . Miller's low back condition, a cause of his condition is his performance of very labor intensive employment following his 1999 surgery.

The review panel did not err in finding that the trial court was not clearly wrong in accepting such opinion.

### 3. MILLER'S CROSS-APPEAL

Miller asserts on cross-appeal that the trial court's findings of fact and conclusions of law do not support a denial of an award of interest, penalties, and attorney fees. Under the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-125 (Reissue 2004) authorizes a 50-percent penalty payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation benefits. *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005). A "reasonable controversy" regarding a workers' compensation claim may exist, so as to preclude an award of waiting-time penalties to an employee, if there is a question of law previously unanswered by the appellate courts or if the properly adduced evidence would support reasonable but opposite conclusions by the Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. See *Milliken v. Premier Indus.*, 13 Neb. App. 330, 691 N.W.2d 855 (2005). The trial court found that there was a reasonable controversy here, specifically whether Miller suffered an "accident" on April 15, 2002, whether Miller's 2002 injury was caused by Miller's work, and whether the injury was a result of an aggravation or a recurrence. We agree that there was a reasonable controversy as to such issues, and the review panel did not err in affirming the trial court's denial of penalties and fees.

## IX. CONCLUSION

Because Travelers was erroneously permitted to intervene in the litigation after trial and judgment, it was not a proper party to this appeal. Commercial Contractors' arguments are all without merit, and Miller's argument as to fees and penalties is without merit. Therefore, although we affirm the order of the review panel, which affirmed the order of the trial court, we dismiss Travelers' appeal.

AFFIRMED IN PART, AND IN PART
APPEAL DISMISSED.